## The People *ex rel.* Andrew Lynch

### *v.*

## The Board of Supervisors of La Salle County.

*Filed at Ottawa September 27, 1881.*

1.  Election of county officers—*at what time—under the amendment of 1880 of sec. 8 of art. 10 of the constitution of 1870—at what time that amendment became operative.* The amendment of section 8 of article 10 of the constitution of 1870, adopted by a vote of the people in November, 1880, prescribing the tenure of certain county offices, and fixing the times of the election therefor, became a potential and operative part of the constitution, at least as soon as the amendment was by the board of canvassers declared adopted, if not as soon as the polls were closed on the day of the voting for its adoption, and thereby at once accomplished a change in substance in the condition of the law in relation to general elections for the class of county offices provided for, which change was immediate.

2.  In considering particularly as to the time for holding the election for county judges, county clerks and county treasurers, it was *held,* that when it was declared in the amendment that these officers should be elected at a general election to be held in November, 1882, it was intended to substitute this declaration for all law then in force, whether constitutional or statutory, regulating the times for the general election as applicable to them. The effect of the adoption of the amendment was to supersede the previous provisions for a general election for these officers in November, 1881, and thereby to extend the time wherein the then incumbents should have the right to hold their offices until the first Monday of December, 1882.

3.  Same—*legislative construction of the constitution upon political questions—how far obligatory upon the courts.* In considering the construction to be given to a clause of the constitution, it is a rule of law that where the questions involved are purely political in their character, and depend upon the construction to be given to provisions of doubtful interpretation, the court will not only give great consideration to a construction given by the political departments of the State, but will generally follow such construction implicitly.

4.  So the legislation of 1881, enacted by the General Assembly and approved by the Governor, repealing the statutes providing for a general election of county officers in November, 1881, and in lieu thereof providing for the election of such officers in November, 1882, may be regarded as a construction of this amendment of the constitution as intended to supersede and dispense with such an election in 1881. It is considered that such a construction in such a case ought not to be disregarded, as affording an additional reason in support of the construction given by the court.

5. SAME—*constitutionality of the act of 1881.* This legislation of 1881, while it operates practically to extend the terms of office of the present incumbents of these county offices for one year, is not obnoxious to the objection that it is in violation of that provision of the constitution which forbids the abridgment or extension of those terms of office by statute,—for, the constitutional amendment of 1880, in requiring an election in 1882, permits but one of two plans to be adopted by means of which effect can be given to it— either to hold an election in November, 1881, as heretofore, and limit the terms of the officers then elected to one year, or to omit the election in 1881, and extend the terms of the present incumbents for one year; and the amendment being silent on this particular subject, it may well be implied that a discretion was given the General Assembly to select between the two plans, either of which would result in legislation inhibited by the letter of the constitution, but without the adoption of one of which the end sought by the amendment could not be attained.

There was a joint resolution passed by the Senate and House of Representatives of the Thirty-first General Assembly, which convened on the 8th day of January, 1879, as follows:

"*Resolved by the Senate of the State of Illinois, the House of Representatives concurring herein,* That there shall be submitted to the voters of this State, at the next election for members of the General Assembly, a proposition to so amend the eighth (8) section of the tenth (10) article of the constitution of this State, so that the same may read as follows: 'In each county there shall be elected the following county officers, at the general election to be held on the Tuesday after the first Monday in November, A. D. 1882: a county judge, county clerk, sheriff and treasurer; and at the election to be held on the Tuesday after the first Monday in November, A. D. 1884, a coroner, and clerk of the circuit court, (who may be *ex officio* recorder of deeds, except in counties having 60,000 or more inhabitants, in which counties a recorder of deeds shall be elected at the general election in 1884). Each of said officers shall enter upon the duties of his office, respectively, on the first Monday of December after his election, and they shall hold their respective offices for the term of four years, and until their successors are elected and qualified: *Provided,* that no person having once been elected

to the office of sheriff, or treasurer, shall be eligible to reëlection to said office for four years after the expiration of the term for which he shall have been elected.' "

At the election for members of the General Assembly next succeeding the date of the passage of that resolution, a majority of the votes cast upon the question of the proposed amendment were in favor of its adoption, and it was, accordingly, by the board of canvassers declared adopted.

Section 8 of article 10 of the constitution of 1870, of which the foregoing is an amendment, provided that county treasurers, and sheriffs and coroners, should hold their offices for *two* years, and until their successors should be elected and qualified.

The Thirty-second General Assembly passed "An act to amend sections sixteen, seventeen, nineteen, twenty-one, twenty-two, twenty-three and twenty-four of an act entitled 'an act in regard to elections, and to provide for filling vacancies in elective offices,'" approved April 3, 1872, in force July 1, 1872. The amendatory act was approved May 10, 1881, and in force July 1, 1881.

The amended section 16 provides: "The county judges and county clerks shall be elected on Tuesday next after the first Monday of November, 1882, and every four years thereafter." * * *

Section 17: "The sheriffs shall be elected on Tuesday next after the first Monday of November, 1882, and every four years thereafter; * * * and coroners shall be elected on Tuesday next after the first Monday of November, 1882, who shall hold their offices two years, and on Tuesday next after the first Monday of November, 1884, and every four years thereafter, there shall be elected a coroner in each of the counties of this State." * * *

Section 21: "The county treasurers shall be elected on Tuesday next after the first Monday of November, 1882, and every four years thereafter." * * *

This was a petition to this court in which it was represented, that by section 38 of an act entitled "An act to revise the law in relation to counties," approved and in force March 31, 1874, it is made the duty of the county board of each county to fix the compensation of county officers at the meeting of such board next before the regular election of officers whose compensation is to be fixed.

Petitioner states that he is informed by counsel, and believes, that on the Tuesday after the first Monday of November, 1881, under the constitution and laws of this State, there will be held a regular election in said county for the following county officers, to-wit: County judge, judge of probate court, county clerk, clerk of probate court, and treasurer.

Petitioner further represents that said county board are at the time of this application in session, and that this is the meeting next preceding the regular election of said county officers, and it is therefore their duty to fix the salaries of said officers at their present meeting.

Petitioner further represents that on the 13th of September, 1881, the same being one of the days of the present meeting, a resolution was offered to proceed and fix the salaries, etc., as provided by law, which was by a majority voted down, and thereupon a resolution, declaring that under the constitution and laws of this State the next regular election would occur on the Tuesday after the first Monday of November, 1882, and that said board would not fix the salaries of said county officers until the meeting in September, 1882, was adopted.

Petitioner therefore represents that said county board do not intend to perform their duty of fixing the salaries of said county officers before the next regular election, but on the contrary they have refused and neglected, and will continue to refuse and neglect, the performance of that duty.

The prayer of the petition is, that said board of supervisors of LaSalle county may be duly summoned to answer,

and that a writ of· *mandamus* may be issued requiring them, before the first Tuesday after the first Monday of November, 1881, to fix the compensation of the county judge, judge of· the probate court, county clerk, clerk of the probate court, and treasurer.

The question presented is, whether under the law, construed in the light of the amendment of section 8 of article 10 of the constitution of 1870, an election of county judges, county clerks and county treasurers shall be held in November, 1881, or whether the holding of such election shall be postponed until November, 1882.

This case, and the case of *The People ex rel. Stinger* v. *Kingsley, County Clerk of Marshall County,* next· following, were argued together as one case, the questions in the two cases being of similar character.

Mr. JAMES McCARTNEY, Attorney General, Mr. H. T. GILBERT, and Mr. CONSIDER H. WILLETT, argued the cases orally, in support of the view that the constitutional amendment of 1880, in appointing the election for county officers in November, 1882, did not operate to extend the terms of the present incumbents of those offices to that time, but that, notwithstanding the amendment, an election must be held in November, 1881.

Mr. JOHN M. PALMER, Mr. GEORGE HUNT, and Mr. L. W. BREWER, insisted upon the opposite view, contending that the effect of the amendment was to postpone the election of county officers to November, 1882, and that there can be no election for those offices in November, 1881.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

The questions arising upon the record in this case relate to the time fixed by law for the holding of the next general election for county judges, county clerks, county treasurers, and for the election of judges of probate and clerks of pro-

bate courts in La Salle county and certain other counties. Inasmuch as by law such probate judges and clerks of probate courts are to be elected at the same time and in the same manner as that provided for the election of county judges and county clerks, it will be sufficient to ascertain and declare the law relating in this regard to the election of county judges, county clerks and county treasurers.

Does the law require or authorize a general election to be held for these county offices in November, 1881? On the determination of this question this case must turn. It must be confessed the question is not free from difficulty. We have been favored with a full and able discussion by counsel, yet we do not all take the same views of the questions involved. The proper solution of this controversy depends upon the legal effect of the adoption, in November, 1880, of an amendment to the 8th section of the 10th article of the constitution, and upon the legal effect of statutes passed since that time bearing upon the subject.

We are met at the threshold with the proposition that this amendment, from its very terms, does not become operative until November, 1882, and hence that this amendment is to be construed as though it were declared therein that it should become a part of the constitution at that time, and not before. It need not be denied that the inference sought to be drawn by the latter part of the proposition might well be deduced if the first part of the proposition be true. The 2d section, article 14, of the constitution, speaking as to the effect of the adoption of this class of amendments, says: "If a majority of the electors voting at said election shall vote for the proposed amendments, they shall become a part of this constitution." If this language be construed as like words of the constitution,—relating to the adoption of certain articles of the constitution which were separately submitted in 1870,—were construed, it means that the amendment became a potential part of the constitution on the day on which the

vote for its adoption was cast.  In the absence of matter leading to a different conclusion it must be so held.  The statute, however, under which this amendment was, by joint resolution, submitted for adoption, · declared expressly that the same, if adopted, "shall, by the board of canvassers, be *declared* adopted, and *from thence* become a part of the constitution of this State."  (Laws 1877, p. 5.)

In view of the former rulings of this court, and in view of the words of the statute referred to, it seems plain that the General Assembly of 1879, in submitting the amendment for adoption, and the electors of November, 1880, in voting for its adoption, could not have intended or understood that this amendment should not become a part of the constitution until November, 1882.  The intention is plainly manifested that the same should be engrafted into the constitution as a component and potential part thereof, at least as soon as it should, by the board of canvassers, be declared adopted, if not as soon as the polls were closed on the day of the voting for its adoption.

We concede that a clause or section of a constitution may be a potential part thereof and yet remain *inoperative* for a time, for want of a subject to which it can apply,—potential, having force to operate whenever the exigency to which it can apply shall be presented, but inoperative for a time, for want of a fit subject matter on which to operate.  This, however, is not, in our judgment, the condition of this amendment.  We think when it was declared adopted, it became not only a potential, but an operative part of the constitution, and at once accomplished a change in substance in the condition of the law in relation to general elections for this class of county officers, which change was immediate.

The 8th section of article 10, when adopted in 1870, in its connection with the other clauses of the constitution and the statutes then in force, continued in lawful existence the offices of county judge, county clerk and county treasurer, to hold

such terms and be elected at such times that it required an election to be held for each of these offices in November, 1881. Thus stood the law when the General Assembly submitted this amendment, and when it was adopted by the people. Part of this law consisted of statutes passed before the constitution of 1870 was adopted, and so much thereof as was necessary for the election of officers who should, under the constitution, enter upon their duties on the first Monday of December, 1881, had been by the constitution placed beyond the power of the legislature to destroy by repeal, and was in its very essence to that extent a part of the constitutional law of the land, although in the form of a statute, providing for a general election for county officers in November, 1881, and every two or four years after. In other words, in that indirect way the constitution did fix the times for holding general elections for these officers. When, therefore, it is declared that the 8th section of article 10 should be so changed that these officers shall be elected at the general election to' be held in November, 1882, and that each of these officers shall enter upon the duties of his office on the first Monday of December after his election, and hold his office for the term of four years, and until his successor is elected and qualified, it was, in our judgment, the intention and legal effect of this declaration to substitute this election for the one formerly provided for, and not to add it thereto,—to substitute this declaration for all law then in force, whether constitutional or statutory, regulating the terms of these officers and the times for the general election of these officers. The effect of the adoption was to supersede the previous provisions for a general election for these officers, which was for an election in November, 1881, and thereby to extend the time wherein the then incumbents should have the right to hold their offices until the first Monday of December, 1882. If this be so, it ends controversy upon this subject.

But let us look at this matter in another view. This amendment expressly provides for a change, so that after December 1, 1882, the term of county treasurer shall be four years, instead of two, and so that on and after 1882 the general election of all these officers shall be in November of the years of even numbers, instead of November of · the years of odd numbers. This change could not be accomplished (without shortening the terms of the then incumbents) except in one of two ways. The end could be accomplished by extending the terms of present incumbents one year, or the object could be attained by creating an intervening short term for such offices of one year, from the first Monday of December, 1881, to the first Monday of December, 1882. As already suggested, the amendment expressly shows an intention to bring about this change in some way, and the only practicable modes being the two mentioned, it follows that the amendment, by necessary implication, has declared that it shall be done by one of these modes or the other, and has either indicated that it shall be done upon the first plan mentioned, or it has indicated that it shall be done upon the second plan mentioned, or it has simply declared that it shall be done in one of the two modes mentioned, *without indicating* in any way which plan should be followed.

What is there found in the amendment itself to indicate that it was intended to follow the plan first mentioned, rather than the second plan mentioned? The words of the amendment declare the policy of the State to be, that the terms of such officers shall, as far as practicable, be four years. The extension of the term of the present incumbents for one year, gives to the county judge and to the county clerk each a term of five years, and is a departure from the policy in each case of only one year. Such extension gives to the treasurer a term of three years, being a change approaching the favored term of four years, and not departing from it at all.

On the other hand, the creation of an intervening term of only one year, is in each case a departure of three years from the desired term of four years. In the absence of other considerations, that construction should be adopted which conforms most nearly to the policy of the amendment.

Again, the provisions of the amendment indicated a policy of rendering our general elections less frequent. The plan first mentioned is in furtherance of the policy of the amendment in this regard, while the second plan is in direct violation of the same. It is suggested that the policy of all republican governments demands frequent appeals to the polls for the expression of the will of the people; but such appeals should not be so frequent as to lead many of the electors to neglect the duty of voting, and thus render abortive every effort to procure a full and fair expression of the will of the people.

Again, this question is purely *political*. No private rights are involved. It is a rule of law, well established, that where questions involved are purely political, and depend upon the construction to be given to provisions of doubtful interpretation, the court will not only give great consideration to a construction given by the political departments of the State, but will generally follow such construction implicitly. The legislation of 1881, enacted by the General Assembly and approved by the Governor, repealing the statutes providing for a general election in next November, and in lieu thereof providing for the election of such officers in November, 1882, we regard as a construction of this amendment as intended to supersede and dispense with such an election in 1881. Such a construction in such a case ought not to be disregarded. This is an additional reason in support of the conclusion reached in this case by a majority of the members of this court, that the provisions of the amendment itself indicate that no general election for this class of officers can lawfully be held in the coming November.

But let us assume that this amendment, by its implications, declares merely that the change in question shall be accomplished in one of the two modes mentioned, and does not furnish any indication as to which of the two plans was intended to be adopted, and consider what would be the legal effect of such a position. If the amendment had said expressly that "this change shall be accomplished, either by electing in November, 1881, successors to the present incumbents of these offices, to hold their respective offices for one year, or by extending the terms of the present incumbents for one year," and had there been no indication as to which plan shall be adopted, it seems plain to me that in such case the General Assembly would have been at liberty to adopt either plan, and this though a statute carrying out either plan would be in direct conflict with the words of some general rule found in the constitution. If, then, we assume that the implications of this amendment go no farther than to declare that this change shall be brought about in one of the two modes mentioned, and there is nothing to indicate which course was intended, we are clearly of opinion that in such case the amendment clothed the General Assembly with power to adopt either plan, and that therefore the legislation of 1881, postponing this general election until 1882, was fully warranted by this amendment, and is in every respect valid. Such a construction would, in my judgment, necessarily take the case out of the operation of the general provisions of the constitution, which fix the terms for each of these officers at a definite time, and forbid the abridgment or extension thereof by statute. If the constitution clearly declares, even by implication, that a certain end shall be attained, and it can only be attained by certain special legislation, and if the constitution fails to enact any special legislation to that end, the constitutional declaration that the end shall be accomplished, by necessary implication means that it is the duty of the General Assembly to supply appropriate

legislation; and the rules of the constitution by which such special legislation is in general prohibited, have no application in such case, for the necessary implication of the amendment demands that in this special abnormal affair such rules must in one way or another be disregarded. In such case we hold the legislature has the power to choose between these plans, to adopt either mode, and legislate accordingly.

In the case of *The People* v. *Wall*, 88 Ill. 75, where the constitutionality of a statute was called in question, upon the ground that it provided for the election of certain judges of circuit courts in 1877, for a term of *two* years, while the constitution declared that the terms of office of judges of circuit courts shall be *six* years, it was held by this court that this general provision for terms of six years had no application to legislation enacted to accomplish a change in the circuit system, which change was provided for in the constitution, but as to the mode of accomplishing the change the constitution was silent. So, the amendment of 1880, having provided for a change in the times for the election of certain county officers, and for a change of the terms of certain of them, being silent as to what shall be done in bringing about such change prior to November, 1882, and the change being such that it can not practically be brought about except by doing, prior to the time of which the amendment speaks expressly, one of two abnormal things, and which things are each in contravention of other general provisions of former parts of the constitution, we think that such general provisions, plainly, can have no application to such legislation as may be had in the necessary attainment of the object and end authorized by the amendment itself. In the case of Judge WALL, *supra*, this court, speaking by Mr. Justice SCOTT, said: "The general election for all judges of the circuit courts is fixed by the constitution to take place on a certain day, and they are to be elected for the same

length of time (six years) ; but in projecting *a new system,* that is not practicable, nor is there anything in the constitution that makes it imperative to observe *that clause.*"

If either of these views be correct, it will be seen that the position that the amendment remains inoperative until there can be something on which it can operate, has no application, for these views present a subject matter upon which, by necessary implication, the amendment must operate. It is suggested, that assuming that such officers can lawfully be elected in November, 1881, they would not be elected for a term of merely one year, not warranted by the constitution, but would be chosen for a constitutional term of four years, and their term would, in contemplation of law, be a four years term, *until* in November, 1882, when this new section would come into operation, and suddenly, at that time, convert the term (which up to that time was a four years term) into a term of one year. This seems more ingenious than sound; a regard for form rather than substance; a dealing with mere words rather than thoughts. Were it lawful to elect such officers in November, 1881, it would seem very absurd for the Governor to issue commissions to such officers to hold their offices for four years, from the first Monday of December, 1881, and until their successors shall be elected and qualified, when he knows very well that under the constitution they can not, in any view, hold more than one year.

Upon the whole, a majority of the court hold that no general election for county judges, county clerks or county treasurers is required or authorized by law to be held in November, 1881, and hence judgment will be entered denying the writ of *mandamus* in this case.

*Mandamus denied.*

Mr. JUSTICE WALKER: I do not concur in the conclusion reached in this case.

Mr. JUSTICE SHELDON also does not concur.

Mr. Justice Scott:   I concur in the decision of a majority of the court in denying the peremptory writ of *mandamus* in this case.

With that part of the opinion delivered by Mr. Justice Dickey as to the time when the recent amendment to the constitution becomes a part of that instrument I fully concur, but with the other positions taken in his opinion I do not agree. Undoubtedly the amendment became a part of the constitution when the canvassers declared it was adopted.   That is . plainly expressed in the act submitting it to a vote of the people, and a different time should not be fixed for it to take effect by judicial construction.   From the time of its adoption, the constitution should be read with the amendment as constituting the 8th section of the 10th article, and whatever changes the amendment makes should be regarded as taking effect from that date.

As there is now no constitutional provision that authorizes or directs an election for the officers enumerated in the amendment to be holden in November, 1881, and as the sections of the act of the General Assembly in force July 1, 1872, in regard to the election of such officers, have been so amended as to provide for an election in November, 1882, I am of opinion no election can be holden for such officers until the time fixed by the constitution, and the statute passed in pursuance thereof.   The fact a day in November, 1882, is fixed for the election of such officers, inhibits as effectually an election at an earlier day as if the constitution and the statute had positively forbidden it.

I am further of opinion there is nothing in the constitution or the act of the General Assembly that can be construed as extending the terms of the present incumbents of those offices. By law their respective terms will expire in 1881, but the 8th section of article 10 of the constitution, both before and since its amendment, continues them in office until their successors "shall be elected and qualified."   The constitu-

tion in that regard has not been changed by the recent amendment. No successors to the present officers can be elected until November, 1882. Until that time the present county officers, notwithstanding their respective terms of office may sooner expire, will hold over under the provisions of the constitution, in precisely the same manner as they would if the people should fail to elect their successors at a general election appointed by law.