The State, *ex rel.* Michener, Attorney General, *v.* Harrison *et al.*

Filed Dec. 14, 1888.

No. 13,806.

THE STATE, EX REL. MICHENER, ATTORNEY GENERAL, *v.* HARRISON ET AL.

OFFICE AND OFFICER. — *Benevolent Institutions.* — *President of Boards of Trustees.* — *Compensation.* — *Statute Construed.* — The acts of 1879 and 1883 (Acts of 1879, p. 4; Acts of 1883, p. 15), providing for the management of the State benevolent institutions, contemplate that the president of the boards of trustees shall receive the compensation provided for the president and also compensation as trustee of each of the institutions, as he is not only president of the several boards, but is also expressly made a trustee for each institution.

SAME. — *Construction of Statute by Practice and Usage.* — *Acquiescence.* — Where a doubtful statute, providing for the compensation of a public official, has received a construction by the Legislature and by the practice and usage of the admistrative department of the government, in which construction the officer concerned has acquiesced, he is bound by the compensation thereby fixed.

SAME. — *Holding Two Lucrative Offices.* — *Constitutional Inhibition.* — The fact

that the president of the boards of trustees of the benevolent institutions is entitled to compensation for his services as president of the boards and also to compensation for his services as trustee for the several institutions, does not make him the holder of two lucrative offices, as prohibited by the Constitution.

STATUTE.—*Construction.*—*Legislative Intention.*—To ascertain the intention of the Legislature in the enactment of a statute, all the sections of the statute and the several acts of the Legislature upon the same subject must be construed together; and in the construction of a doubtful statute, other statutes upon the same subject may be considered, although no longer in force.

SAME.—*Construction by Practice and Usage.*—For a consideration of cases relating to the construction of ambiguous statutes by the practice and usage of the departments of government, of public officers and of the people, see opinion.

From the Boone Circuit Court.

*L. T. Michener,* Attorney General, for appellant.

*C. S. Wesner, O. D. Wesner, R. W. Harrison* and *B. S. Higgins,* for appellees.

ZOLLARS, J.—In 1883 Thomas H. Harrison was elected president of the boards of trustees for the Hospital for the Insane, the Asylum for the Blind, and the Institution for the Education of the Deaf and Dumb, and gave bond as such, with his co-appellees herein as sureties.

From the time of his election and qualification until this action was commenced, in March, 1887, he drew from the state treasury as salary and compensation the sum of $1,600 per annum.

The attorney general claims that he was entitled to but $900 per annum, and instituted this action, in the name of the State, upon his bond, to recover back from him and his sureties the amount drawn in excess of $900 per annum.

By the first section of the act of 1879 it was provided that the Governor, with the consent of the Senate, should appoint two trustees for each of the benevolent institutions above named, and should, also, with like consent, appoint a president of the boards of trustees of said institutions.

It further provided that the president and the two trustees of each of said institutions should constitute the board of trustees for the government thereof. Acts of 1879, p. 4; R. S. 1881, section 2768.

The third section of that act provides that the boards shall organize by the selection of one member as treasurer and one as secretary, and that the president of the boards shall be the president of each board respectively. R. S. 1881, section 2770.

The fifth section provides that the president and trustees of each of said institutions shall be, and constitute, a board for the management of the business and affairs thereof, with power to make all proper rules, regulations and by-laws for its government; that they shall have a regular meeting at or about the close of each month, and shall meet at least one other time during each month for the purpose of informal consultation or the transaction of current and incidental business.

Other sections of the act clothe the several boards with authority to appoint superintendents, and to supervise the appointments of all other subordinates. They must receive and pass upon reports from the superintendents, audit and allow bills, supervise the improvements and repairs of the buildings and grounds, furnish supplies for the several institutions, etc., etc. In short, the whole care, maintenance, preservation, management and supervision of the several institutions is lodged with the board of trustees of each respectively. Each board of trustees is responsible for the management of the institution over which it is placed.

The act of 1883 (Acts of 1883, p. 15), which superseded and repealed the first and second sections of the act of 1879, does not affect the duties and responsibilities of the president and the several boards of trustees, but is more emphatic in making the president of the several boards an essential member of each.

The first section of that act is as follows: " Be it enacted

* * * That the government and management of the Indiana Hospital for the Insane, of the Asylum for the Blind and of the Institution for the Education of the Deaf and Dumb shall be and is hereby vested in three several boards of trustees, consisting of two trustees for each of said institutions and one president for the three several boards, which president shall be the presiding officer and third trustee of each of said boards. * * * The said boards shall, on their organization and every two years thereafter, select one of their number as secretary and one as treasurer thereof."

Under these acts there can be no complete board of trustees for either of the institutions without the president. He must meet with each of the boards as a member of it. He must do the work of a member of each board. He is responsible with each board for the management of the institution under its supervision.

Being a member of all the boards, with general supervisory powers and duties, he must perform those duties and be responsible for the management of all the institutions. And thus it is, that the president of the boards must assume the responsibility and perform the duties imposed upon him as the officer having general supervisory power, and must, also, perform as much service as one of the trustees in each of the several boards, and assume the responsibility of such a trustee.

Counsel for appellee argue that by reason of these multiplied duties, and the responsibilities resting upon the president, he ought to receive the same compensation as one of the trustees of each of the boards, and, also, compensation for the additional duties and responsibilities imposed and resting upon him as president of all the boards. That argument, while it might more properly be addressed to the Legislature, and can not have weight where there is no ambiguity in the statutes, is yet entitled to some consideration where, as here, there is doubt as to the proper construction

to be given to the statutes bearing upon the question of compensation.

The act of 1879, which provided for the appointment of boards of trustees for the benevolent institutions, and for the "more efficient management and uniform government of the same," contained a section providing for compensation, which is still in force, and is as follows:

"The president of the boards shall receive, as compensation for his services, a salary, payable quarterly, at the rate of nine hundred dollars per annum; and the trustees of the insane asylum shall, in like manner, be paid salaries at the rate of six hundred dollars to each; and the trustees of the institution for the education of the deaf and dumb shall, in like manner, be paid salaries at the rate of four hundred dollars to each; and the trustees of the asylum for the blind shall, in like manner, be paid salaries at the rate of three hundred dollars to each," etc.    R. S. 1881, section 2778.

A cardinal rule in the construction of a statute, or a particular section of a statute, is to ascertain the intention of the law-makers in its enactment.    And in order to determine what that intention may have been, all of the different sections of the statute, and the several acts of the Legislature upon the same subject, must be construed together.    It is also well settled, that, for the purpose of arriving at a proper construction of a doubtful statute, other statutes upon the same subject may be considered, although they may be no longer in force.    *City of Evansville* v. *Summers,* 108 Ind. 189, and cases there cited; *Western U. T. Co.* v. *Steele,* 108 Ind. 163; Endlich Interp. Stat., section 366.

It is manifest that those rules should be applied here, and that the section last above quoted should be construed in connection with the several sections of the act of which it forms a part, and in connection with the section of the act of 1883, above set out.    It will be proper, also, to keep in mind the first two sections of the act of 1879, which were repealed by the act of 1883.

Thus considering the statutes together, the proper construction of section 2778, *supra,* becomes a question not clear of doubt, and opens a field for discussion.

As already stated, the attorney general contends that $900 per annum is provided as a full compensation for all services rendered by the president of the boards of trustees, whether exercising his general supervisory powers, or acting with each separate board as a member of it.

That contention can not be said to be without reason. It may plausibly be argued that, under the act of 1879, of which section 2778, *supra,* forms a part, the president of the boards of trustees becomes a member of each board by virtue of his position as president only, and that while acting with each separate board he is performing his duties as president, and that the act of 1883 does not materially change his relations to the several boards; and that, by reason of these considerations, the compensation to him as president was intended to cover all services in any way to be performed by him.

On the other hand, counsel for appellees contend that, under the act of 1883, *supra,* $900 per annum is provided as compensation for the services and responsibilities imposed and resting upon the president of the several boards in the discharge of his general supervisory powers; that he is made a trustee of each of the several boards, and is, therefore, entitled to the compensation provided for a trustee of each of the boards with which he acts, and of which he is a member. That contention, again, is not without reason.

The act of 1879 very clearly made the president a member of the several boards, and, as already stated, without him neither one of the boards could be complete. The duties and responsibilities of a member of each of the several boards were imposed upon and vested in him. For all practical purposes, at least, he was one of the trustees of each of the several boards.

The act of 1883, in more specific terms, declares that the

president for the several boards "shall be the presiding officer and third trustee of each of said boards." The title under which he is to be elected is the "president of the boards," but the act seems to make him a trustee in each of the several boards just as clearly and emphatically as it makes him the president. It lodges and vests the government and management of the benevolent institutions in the several boards of trustees, and provides for the election of three boards. Two of the members of each board are to be elected with the title of trustees. Another person is to be elected with the title of president of the boards, but the same act which clothes him with that title just as emphatically declares that he shall be the "third trustee of each of said boards."

There is no more authority for saying that he is the president of the boards, and not a trustee of each, than for saying that he is a trustee of each board, and not the president of all of them. The act which makes him the president of the three boards just as clearly makes him a trustee of each. He performs the duties of the president of all the boards, and of a trustee of each. It is because of this that counsel for appellees claim that he is entitled to the $900 fixed as the compensation of the president, and also to the amounts fixed as the compensation of a trustee in each of the boards. The total of these several amounts, added to the $900, is $2,200.

As we have said, there is room here for argument and for doubt. After a careful examination of the several statutes, and the question in issue, we have concluded that in this case the doubt should be solved and the question settled by a resort to the construction given to the statutes by the Legislature, the executive department, which, under our Constitution, includes the administrative department, by the practice and usage of that department, and the acquiescence of Harrison and his predecessor in that construction, practice and usage.

A construction put upon an act by the Legislature itself,

by means of a provision embodied in the same act, that it shall, or shall not, be construed in a certain designated manner, is binding on the courts, although the latter, without such a direction, would have understood the language to mean something different. And it has been held that a statute declaratory of a former one has the same effect upon the construction of such former act, in the absence of intervening rights, as if the declaratory act had been embodied in the original act at the time of its passage. Endlich Interp. Stat., section 365. See, also, *Smith* v. *State*, 28 Ind. 321 ; *Jones* v. *Surprise*, 4 New Eng. Rep. 292 (294).

And so, a construction given to an act by the Legislature, by a subsequent act or otherwise, either expressly or impliedly, is of weight in all cases of doubt as to the proper construction to be given to such act. That is especially so, if the construction thus given is at the same session with the passage of the act. Sedgwick Constr. Stat. and Const. Law, p. 214.

In speaking of the meaning to be given to certain words in a statute, the Supreme Court of Pennsylvania, in the case of *Philadelphia, etc., R. R. Co.* v. *Catawissa R. R. Co.*, 53 Pa. St. 20 (60–1), said : "And if a contemporaneous construction of the same words by the Legislature itself can be discovered, it is very high evidence of the sense in which the words are to be received ; for *contemporanea expositio est fortissima in lege.*" See, also, Sedgwick Constr. Stat., p. 552; *People* v. *Supervisors*, 100 Ill. 495; *Hahn* v. *United States*, 107 U. S. 402; *Stuart* v. *Laird*, 1 Cranch, 299.

And so, the practical construction given to a statute by the public officers of the State, and acted upon by those interested, and by the people, is to be considered in cases of doubt. In some cases it has been held to be conclusive. Sedgwick Constr. Stat., p. 227.

In the case of *Blake* v. *Nat'l Banks*, 23 Wall. 307 (321), the Supreme Court of the United States used this language : " The ambiguous terms of the statute prevent the possibility

of a satisfactory solution of the question presented. We are inclined to adopt the construction practically placed upon it by the administrative department of the government." See, also, *Solomon* v. *Commissioners, etc.,* 41 Ga. 157 ; Endlich Interp. Stat., section 357 ; Bishop Written Laws, section 104 ; *Bailey* v. *Rolfe,* 16 N. H. 247 ; *Chesnut* v. *Shane,* 16 Ohio, 599.

In Endlich on the Interpretation of Statutes, at section 34, is this: "Another class of external circumstances which have, under peculiar circumstances, been sometimes taken into consideration, in construing a statute, consists of acts done under it ; for usage may determine the meaning of the language, at all events when the meaning is not free from ambiguity." See, also, *Moers* v. *City of Reading,* 21 Pa. St. 188 ; *McKeen* v. *Delancy,* 5 Cranch, 22.

In speaking of the consideration to be given by the courts to a construction placed upon a statute by another department of the government, and to the practice and usage of such departments, etc., this court, in the case of *Board, etc.,* v. *Bunting,* 111 Ind. 143, said : " We know judicially that it has always been the custom to make suitable provision for the sheriff's residence, and this custom has given a construction to the law which could not be disregarded, even if there was doubt as to the meaning of the statute."

In speaking of a practical construction given to a statute, the Supreme Court of Illinois said : " It has always been regarded by the courts as equivalent to a positive law." *Bruce* v. *Schuyler,* 4 Gilm. 221.

By another court the principle was stated, and it was said : " We can not shake a principle which in practice has so long and so extensively prevailed." *Rogers* v. *Goodwin,* 2 Mass. 475.

There are many cases which declare and enforce this principle ; among them are *Stuart* v. *Laird,* 1 Cranch, 299 ; *Martin* v. *Hunter,* 1 Wheat. 304 ; *Cohens* v. *Virginia,* 6 Wheat.

264; *Ogden* v. *Saunders*, 12 Wheat. 213; *Minor* v. *Happersett*, 21 Wall. 162; *State* v. *Parkinson*, 5 Nev. 15; *Pike* v. *Megoun*, 44 Mo. 491; *People* v. *Supervisors*, 100 Ill. 495; *State* v. *French*, 2 Pinney (Wis.), 181. See, also, *Weaver* v. *Templin*, 113 Ind. 298.

The General Assembly, which passed the act of 1879, *supra*, also, and but a few days after the passage of that act, passed an appropriation bill. It may be proper to observe here that in the act of 1879, *supra*, " commissioners " is sometimes used as the equivalent of " trustees." It is so used in one instance in the appropriation bill above mentioned. In that bill, appropriating various sums to various objects, there was the following in relation to the benevolent institutions:

" For the maintenance of the hospital for the insane, one hundred and twenty-five thousand dollars, which shall include all receipts and earnings of the institution, as well as the amounts paid by the counties for clothing, in support of patients or otherwise, and out of which shall be paid the salaries of the president of the board, nine hundred dollars, and commissioners, at the rate of six hundred dollars per annum. * * * For the maintenance of the institution for the education of the blind, twenty-seven thousand dollars, which appropriation shall include all receipts and earnings of the institution, as well as amounts paid by counties for clothing or otherwise, in support of inmates, and out of which shall be paid the salaries of the president of the board and the trustees, at the rate of three hundred dollars per annum. * * * For the maintenance of the institution for the education of the deaf and dumb, fifty-five thousand dollars, which appropriation shall include all the receipts and earnings of the institution, as well as amounts received from payments of counties for clothing and otherwise, in support of inmates, and out of which shall be paid the salaries of the president of the board of [and] trustees, at the rate of four hundred dollars each per annum."

It is very clear from that act, that the Legislature regarded the president of the boards as also a trustee in each of the boards, although he is mentioned therein, in each case, as the president of the particular board. Not only that, but in the appropriation for the institutions for the education of the blind and the deaf and dumb, he was very clearly given the salary of a trustee in the respective boards. In the appropriation for the hospital for the insane, it may not be so clear that the president was given the salary of a trustee in that institution, in addition to the nine hundred dollars fixed as the salary of the president as such, and yet the regarding of him as a trustee in the board for that institution, and the giving to him of the salary of a trustee in the other institutions, make it reasonably certain that the purpose was to give to him the compensation fixed for a trustee in that hospital, in addition to the amount fixed as the salary of the president.

It is a part of the history of the State, however, of which the courts will take notice, that the administrative department of the government construed both the acts providing for the several boards, for the president, for the compensation, and the appropriation act above, as meaning that the president, as president, and as a trustee in the several boards, should receive as compensation the sum of one thousand six hundred dollars per annum; and that that department paid to the predecessor of Harrison, and to him, that amount per annum, until about the time this action was commenced; and further, that both Harrison and his predecessor acquiesced in that construction, and accepted that sum as full compensation for their services as president, and as a member of, and trustee in, the several boards.

In that construction, practice and usage of the administrative department, the other departments have also acquiesced, although several sessions of the Legislature have intervened, or at least no objection has been made in any quarter until this action was commenced.

Having acquiesced, as Harrison has, he should not now be allowed to claim more than $1,600 per annum as compensation for his services, were he inclined to do so. While his counsel, in their brief, argue that he is, and has been, entitled to $2,200 per annum, it is not apparent that he has not been satisfied to accept as payment in full $1,600, the amount paid to him until this action was commenced. Upon the question of his acquiescence, see *Hahn* v. *United States, supra,* and, as bearing somewhat upon that question, see, also, *Rogers* v. *Goodwin, supra.*

As above stated, until about the time this action was commenced, Harrison drew $1,600 per annum as in full of the compensation due to him. Since then he has been allowed to draw but $900 per annum. He is now entitled to receive an amount, which, with the sum drawn, will make his compensation $1,600 per annum. Here the attorney general interposes an objection, to which we need not, in our judgment, devote much time. It is, that to allow the president to draw over $900 per annum is to make him the holder of two lucrative offices, in violation of the Constitution.

That objection, we think, is without merit. The president performs duties in more than one capacity, but those duties are in the same general line, and in promotion of one common purpose.

A township trustee, also, acts in a double capacity, and with a different official name. He is the trustee of the civil township and the trustee of the school township. And so, the lieutenant-governor presides over the Senate, and also acts as a member of the State Board of Equalization, and receives pay for both services. Those officers have so acted from the adoption of the Constitution until now, with the acquiescence of the people, and all of the departments of the State government, without any claim from any one that they have been holding two lucrative offices.

Other questions are discussed by appellee's counsel which might require serious consideration if it were necessary to

decide them.   The conclusions reached and already stated render a decision upon those questions unnecessary.

As the ruling of the court below in sustaining the demurrer to the complaint is in accord with what we here hold, the judgment is in all things affirmed.

Filed Dec. 15, 1888.