Bradbury, C .J.
The defendant in error, a resident of Cleveland, in the county of Cuyahoga, owned preferred shares of stock in The Sandusky Portland Cement Company, of the par value of $10,-000, which in 1895, he declined to list for taxation on the ground that the corporation, though created under the laws of West Virginia, had its principal office, place of business and property in Ohio, and that it listed and paid taxes in this state on all its property; which action of the corporation, by vir *260 tue of Section 2746, Revised Statutes, he claimed exempted the shares of its capital stock from taxation. The board of equalization of the city of Cleveland, however, denied his claim, and valuing his stock at $6,000, added that sum to the amount of his taxable property, and taxes thereon were charged against him on the books of the auditor of Cuyahoga county. This action was brought to restrain the collection of the taxes assessed against him by reason of the addition thus made to his taxable property. In his petition he alleged as the grounds on which the collection of the taxes in controversy should be restrained, that the corporation, as above stated, had listed and paid taxes in this state on all of its property. Issue was taken on this averment of his petition. After a trial in the court of common pleas the cause was appealed to the circuit court, there tried on its merits and the facts found and separately stated by the court as follows:
’’The Sandusky Portland Cement Company is, and at all times herein referred to has been, a corporation organized under the laws of the state of West Virginia, having its principal office and principal .place of doing business in Erie county, Ohio. * * * and engaged solely in the business of extracting from its lands in said Erie county, the materials for Portland cement, and manufacturing such cement from such materials upon said lands in said county and there selling the same. Its property upon the day preceding the second Monday in April, 1895, consisted of its real estate and plant thereon, in said county, cement on hand in said county] said land, plant and cement constituting the bulk of its property), cash to the amount of $41.19 in its possession in said county, $44.50 on deposit *261 in a bank in said county, and accounts receivable amounting to $8,136.53. It owed on said day legal bona fide debts in the form of bills and accounts payable amounting to $16,630.82.* * * All the personal property field by it witfiin tfie year preceding tfie first day of April, 1895, to be used in manufacturing, or partially or wholly manufactured, was so field by it in said Erie county. All of its said property, except said accounts receivable, was listed for taxation in tfie name of said company, and taxed in tfie name of said company, in 1895, in said county. Tfie company fiad no office and did no business in West Virginia, during tfie times referred to.”
Tfie defendant in error relies upon tfie provision of Section 2746, R. S., wfiicfi reads as follows: “Section 2746. Personal property of every description, moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, shall be listed in tfie name of tfie person who was tfie owner thereof on tfie day preceding tfie second Monday of April of each year; but no person shall be required to list for taxation any share or shares of tfie capital stock of any company tfie capital stock of wfiicfi is taxed in tfie name of such company.”
This exemption of shares of tfie corporate stock from taxation, by tfie terms of tfie foregoing section, is made to rest on tfie circumstance that tfie “capital stock” of tfie company “is taxed in tfie name of tfie company.” The phrase “capital stock,” witfiin tfie meaning of that term, as employed in that section, should be field to embrace tfie entire corporate property. If any part of tfie corporate property is not taxed witfiin this state, tfie owners of shares of its stock who are residents of this state are not exempt by virtue of tfie provisions of that *262 section from, listing those shares for taxation in this state and paying taxes thereon, the exemption applying only in cases where the “capital stock,” i. e., all the corporate property, has been taxed Within this state. Lee v. Sturges; Insurance Co. v. Ratterman, 46 Ohio St., 153; Sturges v. Carter, 114 U. S., 511.
Although the language of that section in terms exempts corporate shares from taxation only where the capital stock is taxed in the name of the company, yet if all of it was by law taxable, but by the neglect of assessing or corporate officers was not taxed, there would, nevertheless, be strong ground to hold that the shares would be exempt from taxation in the hands of its unoffending owners, and the public remitted for relief against the corporation under the laws that provide for correcting false returns. This question, however, is neither directly involved in the case now before us nor discussed by counsel, the defendant in error not planting his claim to relief on such omission, but contends that as matter of fact all the corporate property was taxed in this state. The finding of fact places this contention beyond all controversy, unless the choses in action of the corporation, which were found to aggregate $8,000, should have been listed for taxation in this state, notwithstanding the corporate liabilities were still greater. The decision of the case depends upon this question.
The finding of the circuit court, in as far as it rejects on this question, shows that the corporation whose stock defendant in error held, was a foreign corporation, but that all of its property was situated within this state and its business wholly conducted herein. Whatever situs, in fact, its choses in action possessed, was also herein, for it appears *263 that it maintained no office and did no business whatever in West Virginia, the state by which it was created, but that its office was in this state where its property was situated and its • business transacted.- And whether these choses in action consisted of promissory notes, book accounts or other evidence of indebtedness, they must be presumed to have been kept in its office in this state. However, notwithstanding all this, doubtless the legal situs of this intangible property for most purposes, was that of the residence of the corporation, which, in law, is within the state by whose authority it was created. Bank of Augusta v. Earle, 13 Pet., 519; B. & O. R. R. Co. v. Cary, 28 Ohio St., 208; Bridge Co. v. Mayer, 31 Ohio St., 317; 25 Am. and Eng. Ency. of Law (1st Ed.), 146.
Does that situs for all purposes adhere to the corporate residence, or may choses in action, having the relation, connection and situation in which these were found, be held to possess such a situs in this state as will clothe the state with jurisdiction over them for taxation? The state attempts by section 2744, Revised Statutes, to assert and exercise such power or jurisdiction. The section, so far as it relates to this subject, reads as follows: Section 2744. “The president, secretary * * * of every joint stock company, for whatever purpose they may have been created, whether incorporated by any law of this state or not, shall list for taxation * * * all the'personal property, which shall be held to include * * * credits of such company or corporation within the state.”
We perceive no reason for denying to the state the power asserted by this section. If men choose to resort to another state or country for authority to organize a corporation for the purpose of engag *264 ing in business in this state, or if that was not their original purpose, choose afterwards to plant themselves herein, and in either case transact the corporate business and hold the corporate property wholly within our borders, and enjoy the protection of our laws, it is only just and reasonable that its property should be subject to taxation herein as fully as if its organization had been effected under our own laws, and the right of taxation should not be defeated nor limited upon the ground that for some other purpose the situs of a part of its property should be regarded as being in the state or country where the corporation was organized.
Where foreign corporations voluntarily bring their property and business into this' state to avail themselves of advantages found here which they believe will enhance the probabilities that the business they intend to pursue will be profitable, they should not be heard to complain of laws which tax them as domestic corporations are taxed by the state. We hold, therefore, that the provisions of Section 2744, which make it the duty of foreign corporations to list for taxation in this state, their choses in action where they are held within this state and grow out of the business they conduct herein, is a valid exercise of the taxing powers vested in the state. This holding finds support in many adjudications, among which may be cited The People ex rel. v. The Village of Ogdensburgh, 48 N. Y., 390; Redmond v. Commissioner, 87 N. Car., 122; State ex rel, Taylor, Adm’r., v. St. Louis County Court, 47 Mo., 594. The state thus having jurisdiction to tax; among other classes of property owned by foreign corporations, its choses'in action found here which grow out of the business it transacts in this state, it becomes necessary to consider how *265 they should be or are taxed by our laws. They fall within that class of property which our tax laws call “credits,” a definition of which is found in Section 2730, Revised Statutes, in so far as material to the present inquiry in these words: “The term ‘credits’ shall be held to mean the excess of the sum of legal claims and demands * * * over and above, the sum of legal Iona fide debts owing by such person.” This definition of “credits” applies equally to all persons and corporations, foreign or domestic. So that where a duty is enjoined upon either to list for taxation its “credits,” the term “credit” implies the balance remaining after all dona fide debts are deducted from its legal claims and demands. In this case the finding of the court showing that the corporate claims and demands aggregated $8,000, and its legal liabilities $16,000, therefore within this statutory definition it had no credits to list for taxation. The finding of facts showing further that the corporation had listed all of its other property in this state, it follows that it paid taxes on all its property and its shares of stock were not taxable. This conclusion, however, depends upon the meaning of the term “credits.” It is a constitutional term and found in Section 2 of Article 13 of the Constitution of 1851, where it is declared that “Laws shall be passed taxing by uniform rule all moneys, “credits” * * * etc. The framers of the Constitution did not define the word “credits,” which it thus employs to denote a specific subject of taxation. Prom the nature of its objects, and the brevity required of these fundamental instruments they can not deal in definitions, but can lay down only general rules, and employ general terms, leaving questions of construction to the appropriate depart *266 ments of the government. This court in the year 1853, Bank v. Hines, 3 Ohio St., 1, in construing this section of the Constitution, held that a statute which allowed debts to be deducted from moneys and credits was repugnant to that section of the Constitution and, therefore, void. Ranney, J., in this regard, dissented from so much of the opinion and judgment as denied the right to deduct liabilities from claims and demands. Three years later, in Latimer et al. v. Morgan, Auditor, 6 Ohio St., 279, this ruling was adhered to by the court. Nevertheless, in 1856, the general assembly by statute defined the term “credit” and declared it to mean “the excess of the sum of all legal claims and demands * * * over and above the sum of the legal Iona fide debts owing by such person.” And ever since, a period of more than forty years, that legislative definition has been acquiesced in and Bank v. Hines, in as far as it denied the right to deduct liabilities from claims and demands, has been ignored. What this term “credits” means is directly involved in this action; for if that term, as it is found in the Constitution, is equivalent to the “claims and demands” so as to require every claim or demand, or in othe” words every chose in action, to be specifically listed for taxation in like manner as specific items of tangible property are listed, the general assembly has no power to assign to such term, or declare it to possess, any other meaning. This want of power in that body rests upon the established principle that the interpretation or construction which is to be placed on the language of the Constitution, at least where private, pecuniary rights are involved, belong not to the legislative, but to the judicial department of the state. Governor v. Porter, 5 Humph., 165; *267 Westinghausen v. The People, 44 Mich., 265; Nougues v. Douglass, 7 California, 65; People v. Lynch, 100 Ill., 495; Powell v. The State, 17 Tex. App., 345.
Nevertheless, the legislative declaration under consideration, followed as it has been for so many years as well by those who gather, as by those who pay taxes, should be accorded great weight in determining this right of deduction. The People v. Andrew Lynch, 100 Ill., 495.
The word “credits” in the connection in which it is used in the Constitution is not made at all clear by a resort to the lexicographers. It is apparent, however, that if the framers of the Constitution had intended to specifically tax book accounts, promissory notes and the like, it would have only required the addition of a few words, not at all incompatible with the brevity required in such instruments, to manifest that intention. The ease with which it could have been done gives to the omission a signification entitled to some consideration. The administration of the laws governing taxation has developed the difficulties, if not the impracticability, of permitting the subtraction of debts and liabilities of the owner of real estate and tangible personal property from its value for taxation. Though even here there are those who contend that the deduction should be made.
The difficulties however attending a deduction of liabilities from claims and demands have not proved formidable since the practice was authorized by the legislature, and the practice itself has received general approbation. For these considerations, not to specify others, we are of opinion that the legislative declaration is in accord with the Constitution and, therefore, hold that the corporation involved *268 in this controversy rightfully, in listing its property for taxation, deducted its liabilities from its claims and demands.

Judgment affirmed.