IN RE NICK ARRIGO.

NICK ARRIGO, APPELLEE, V. GUS A. HYERS, SHERIFF, APPELLANT.

FILED APRIL 3, 1915. No. 18437.

1. Statutes: DEFINITIONS: LEGISLATIVE POWER. The legislature may define words used in a statute so that their meaning is extended.

2. ———: ———: CONSTRUCTION. A legislative definition or an interpretative provision in a statute designed to extend a particular word so as to include more than its usual meaning should be construed reasonably and in accordance with the intent and purpose of the whole act.

3. Food: PURE FOOD LAW: DEFINITIONS: POLICE POWER. It is within the police power of the state to provide that certain food products sold in package form shall be deemed "misbranded" if there be contained in the package any gifts, premiums, or prizes.

4. ———: ———: VALIDITY: FEDERAL LAWS. The fact that congress has declared when a package of food shall be deemed misbranded does not prevent a state from making other requirements not inconsistent with the act of congress respecting the sale of food products in package form.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. Reversed.

Grant G. Martin, Attorney General, Frank E. Edgerton and J. B. Strode, for appellant.

T. S. Allen and E. G. Maggi, contra.

LETTON, J.

A criminal complaint was filed against the relator, charging that on the 9th day of October, 1913, he unlaw-

fully sold one package of "Souvenir Checkers Popcorn Confection" to one E. L. Redfern, in which package was unlawfully contained a certain gift, premium and prize, to wit: One toy tin butterfly with pin affixed. He was found guilty and required to pay a fine of $10 and costs. Having failed to pay his fine, he was committed to jail until discharged. He brought these proceedings in habeas corpus to obtain his release. A hearing was had, and relator discharged. The state has prosecuted an appeal.

The question presented is whether the relator was guilty of a violation of the pure food act. Rev. St. 1913, ch. 24. He asserts that, since there was no food product in the package but popcorn confection, and this was plainly marked upon the outside thereof, the package was not misbranded, and that subdivision 6, section 2537, Rev. St. 1913, relating to food products in package form, is not within the police power of the state. The state asserts that, since the package sold contained an object in the nature of "a gift, premium or prize," to sell it was a violation of the law. Section 2537 provides that the term "misbranded" shall apply to drugs, liquors and articles of food under certain conditions. It also provides: "For the purpose of this chapter an article shall also be deemed to be misbranded. * * * Sixth. In case of food products if there be contained in the package any gifts, premiums or prizes."

The act in question, while commonly known as the "Pure Food Law," is entitled, "An act to create and maintain a food, drug, dairy and oil commission for the state of Nebraska, to define its powers and duties, to provide for the inspection of foods, drugs, dairy products and oils, to regulate the manufacture and sale of drugs, food products, dairy products, petroleum product and oils," etc. Laws 1913, ch. 109. The general purpose of the act is to protect the public from the adulteration of food products, the unsanitary operation of creameries, dairies, cheese factories, or other places where food products are manufactured or offered for sale, the prevention of fraud upon the public in the sale of food products put up in packages as to

quality and weight, by requiring a correct statement clearly printed on the outside of the main label of the contents, and also of the net weight of the contents exclusive of the container. Many provisions, regulations and restrictions are contained in the act in order to carry out these general purposes. Among these is found the clause upon which this prosecution is based, declaring a package of food products misbranded if there be contained in the package any gifts, premiums or prizes. The evident purpose of the provision as to misbranding is to protect the public by requiring a full disclosure of the contents of each package, and to promote fair and honest competition in the sale of food products by eliminating any act or element designed to conceal the true nature or value of the article packed. These general objects are clearly within the police power of the state. The legislation relates to one of the most essential functions of the government. It treats of the public health, pure foods, and honest weights and measures, which are all matters pertaining to the general welfare and for the protection of the public. For the purpose of enforcing the law, provision is made for a food commission and for inspectors.

The principal arguments of relator are that, unless there is a false statement upon the label, a package is not misbranded, and the legislature has no power to declare it so; "that appellee's business cannot be outlawed because the legislature has defined misbranding to be something that is not misbranding." A number of decisions are cited to the effect that it cannot "make that a party wall which is not a party wall," nor a child born out of lawful wedlock into "a lawfully begotten" one, nor make that a lottery which is not a lottery. We agree in the main with this contention, and also with relator's contention that statutes enacted in the exercise of the police power must have relation to a proper public purpose, and must not arbitrarily invade rights guaranteed by the constitution. Has the legislature power to declare a package so marked "misbranded"? It is an elementary principle of statutory interpretation that, where the legislature expressly states

the meaning which is to be given to a term used in an act, it is the duty of the courts to give it such meaning, and thus carry out the evident intent and purpose of the legislature.

The enforcement of some of the most important provisions of the pure food act depends upon the definition given in the act to many of the words used therein. Unless the words "person," "drug," "adulteration," "misbranded," "blend," and other words therein defined are interpreted to mean that which the legislature declares, the force of the act is practically nullified. Several of these words as used in the act contain ideas not quite within their ordinary meaning. Take the word "drug" as an instance. Many substances may be embraced within the statutory definition which are not ordinarily termed drugs. Also in the statutory definition of "adulteration" a drug is deemed to be adulterated "if its strength or purity fall below the professed standard or quality under which it is sold" (Rev. St. sec. 2536, subd. II), even though no other substances be added to it. Ice cream is deemed "adulterated" if it does not contain at least 14 per cent. butter fat, and fruit cream if it contains less than 12 per cent. butter fat; and yet pure milk varies widely in its content of butter fat, and until this act took effect ice cream in which pure milk and cream were used could not be said to be adulterated merely because its fat content fell below this standard.

The concept which a word conveys is that which custom has accorded it. There is no reason why a legislature may not expand the definition of a word to a reasonable degree and include within the circle of its definition for the purpose of an act, ideas which are related to that concept, but not ordinarily included therein. A definition in a statute is as effective and forceful as any other part of the act. This court has so held in *Herold v. State*, 21 Neb. 50, speaking of a legislative definition of "fraudulent transfer of property:" "This definition is furnished by the act itself, and the definition is as much a part of the act as any other portion. The right of the legislature to prescribe

the legal definitions of its own language must be conceded."
*State v. American Surety Co.*, 91 Neb. 22; *Farmers Bank
v. Hale*, 59 N. Y. 62. This is the general rule. "Any pro-
vision in a statute which declares its meaning or purpose
is authoritative. Whether it relates to the object of a
whole act, or of a single section or of a word, it is a decla-
ration having the force of law. It is binding on the courts,
though otherwise they would have understood the lan-
guage to mean something different." 2 Sutherland (Lewis)
Statutory Construction (2d ed.) sec. 576. See, also, cases
cited in note to sec. 358. "The court is sometimes obliged
by the legislature to put an interpretation on a word which
it does not ordinarily bear when it has been enacted that
something *'shall be deemed'* to be something else." *Brooks
v. Baker*, 1 K. B. Div. (1906, Eng.) 11, 15; *McElhone v.
Philadelphia Quartette Club*, 53 Pa. Sup. Ct. 262; *Com-
monwealth v. Crowl*, 245 Pa. St. 554; *State v. Standard
Oil Co.*, 61 Or. 438; *State v. Harrison*, 116 Ind. 300; *Chi-
cago & E. I. R. Co. v. State*, 153 Ind. 134; *State v. Alli-
son*, 155 Mo. 325; *People v. Henning Co.*, 260 Ill. 554, 49
L. R. A. n. s. 1206, and note; Beal, Cardinal Rules of Legal
Interpretation (2d ed.) 301.

The legislature evidently intended to prevent the label
upon such a package from doing otherwise than speaking
the exact truth. A package may with reason be said to be
misbranded if the label does not accurately describe its
contents. It is reasonable to presume that it believed it to
be a wise provision for the public welfare to enact that
packages of food offered for sale should not contain tin
butterflies, toy savings banks, or printed coupons offered
as prizes. The act contemplates the inspection of dairies,
packing houses, and other sources of food supplies, to the
end that cleanliness and sanitary conditions shall pre-
vail; but there is no provision for the inspection of places
where prizes and gifts are made or handled, however dirty
or unsanitary they may be. If this provision is not in
effect, these articles, brought from whatever germ-laden
source, may be placed in contact with the food. Another
evident purpose was the regulation of the weight of the

food contents, so as to prevent fraud, and so that the purchaser should know the quantity of food he' was buying. The law requires the weight of the "contents" to be stated on the label. Among the contents in this case was a tin butterfly; in another case it was a toy savings bank. The net weight of the contents is stated, but it is left uncertain how much is food. The weight of the article within the package may be greater than that of the food product. It may be of less value, pound for pound, and thus defraud. The purchaser is left in the dark as to the weight of the food he is buying.

It is also argued that since, under the terms of the statute of the United States, this package is not misbranded, that law controls, and the state act cannot be held to apply. A similar question was raised in *Savage v. Jones,* 225 U. S. 501, 32 Sup. Ct. Rep. 715, with respect to the statute of Indiana. It was held that the intent to supersede the police power of the state is not to be implied, unless the act of congress, fairly interpreted, is in actual conflict with the law of the state. We find no such conflict here, and both acts may stand and be enforced.

The act is a beneficent one. It is continually exposed to the assaults of those endeavoring to cut down its provisions, and by a process of elimination to fritter away its value to the public. This should not be done, unless the legislature has failed to speak so that, with the aid afforded by its own definitions, its purpose can be understood. It is a sound rule that, where the intent of the legislature and the object and purpose of a law are obvious, and such manifest purpose and intent are not inconsistent with or outside the terms of the law, it is not allowable to permit the intent and purpose to be defeated merely because not defined and declared in the most complete and accurate language. Black, Interpretation of Laws (2d ed.) sec. 151.

We are of opinion the district court erred in discharging the relator, and its judgment is therefore

REVERSED.

BARNES, J., dissents.