THE PEOPLE OF THE STATE OF ILLINOIS

*v.*

GEORGE W. WALL.

1. JUDICIARY—*constitutionality of act of* 1877, *creating new and larger circuits.* The act of June 2, 1877, entitled "An act to divide the State of Illinois, exclusive of Cook county, into judicial circuits," is not unconstitutional, but is authorized by sec. 13, art. 6, of the constitution.

2. The constitutional provision relating to the judicial department provides for two systems for judicial circuits, one in which one judge only shall be elected, and another in lieu thereof, to be composed of greater population and territory, in which shall be elected not exceeding four judges. The first system was no doubt designed to be first adopted, giving the legislature a discretionary power to adopt the other in lieu thereof, and the constitution being

silent as to when the power might be exercised, it is left to the legislature to determine when it will exercise it.

3.   CONSTITUTIONAL LAW—*when power conferred may be exercised.*  Where the constitution confers a power upon the legislature without limitation as to the time of its exercise, it may be exercised at any time.

4.   SAME—*rule for construing.*  Words, when found in a constitution, as well as in a statute, are to be understood in their ordinary signification.  That which is plainly expressed admits of no construction.

5.   SAME—*legislature has all power not prohibited.*  It is an undeniable principle that, unless prohibited, the General Assembly possesses plenary power in all matters of legislation.

6.   SAME—*restriction as to changing circuits.*  The prohibition as to changing the boundaries of circuits, except at a session of the legislature next preceding the election of circuit judges, has no application to the formation of new and enlarged circuits under section 15 of article 6, in lieu of the prior circuits, but it is intimated that when new circuits are so formed, section 13 may operate as a limitation as to the time of changing such circuits.

7.   SAME—*term of office of circuit judge.*  The constitutional provision fixing the term of office of circuit judges at six years, in no manner affects the tenure of office of the additional judge or judges to be elected on establishing the system authorized under sec. 15, art. 6, of the constitution, but thereafter all judges elected will hold their offices six years.

8.   SAME—*general power carries all necessary means.*  Only general powers can be declared in a constitution, and when power is granted to the General Assembly for any specified purpose, it carries by implication everything necessary to make it effectual, or which is requisite to attain the end in view. Therefore the power to establish appellate courts after the year 1874, carried with it the power to provide for judges to hold the same, who are to be circuit judges.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was an information in the nature of a *quo warranto*, against George W. Wall, to show by what authority he exercised the office of circuit judge.

Mr. JAMES K. EDSALL, Attorney General, for the People.

Mr. A. THORNTON, Mr. H. B. HURD, and Mr. SAMUEL P. WHEELER, for the defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

But one question is made on this record, and that has relation to the validity of the act of June 2, 1877, entitled " An act to divide the State of Illinois, exclusive of Cook county, into judicial circuits." One section of that act provides, that in lieu of the circuits provided for in section 13, in article 6 of the constitution, the State of Illinois, exclusive of Cook county, shall be divided into judicial circuits, and it then declares the third circuit shall be composed of certain counties, naming them, which had previously constituted the twenty-second and twenty-third circuits as established by law. In response to the demand made upon defendant, by the people, to show by what authority he assumed to exercise the office of judge of the circuit court in one of the counties embraced in the third circuit, as its boundaries were defined, he pleaded in proper form his eligibility, election, qualification and commission as judge of the third circuit, created by the act in question, of which the county in which he had assumed to exercise the office of judge of the circuit court was one.

Another section provides, the judges of the circuit courts then in office should still be judges in the respective circuits in which they may reside, and also, for the election, by the electors thereof, of an additional judge in each circuit, making three judges for each circuit, but limiting the term of office of the judges to be so elected to the period of two years, which would expire on the first Monday of August, 1879.

On reference to the article of the constitution in relation to the judicial department, in that part which treats of circuit courts, it will be observed, two systems for judicial circuits are provided for—one as in section 13, to be composed of contiguous counties, in which one judge shall be elected, and another in lieu thereof, to be composed of greater population and territory, in which shall be elected by general ticket not exceeding four judges, who shall hold the circuit courts therein as provided by law. Obviously it was the intention the State should

be divided first into circuits with one judge, under the provisions of section 13, for it is made the duty of the General Assembly to so divide the State, exclusive of Cook county, prior to the expiration of the term of office of the circuit judges then in office. That was accordingly done. But in lieu of the circuits first formed the General Assembly was invested with a discretionary power to adopt another system of circuits, comprising a greater population and territory, and as to the time when the new system in lieu of the former might be established, the constitution is silent. It is a matter plainly with the General Assembly, when the exigency for adopting a new system in lieu of the existing one may arise, and if there is no limitation upon its power in that particular, it is apparent it may be exercised at any time. It is difficult to appreciate how any construction that can be adopted as to these several paragraphs or sections relating to this subject, could assist to any better understanding of their meaning. When construed together, as is our duty to do, and each provision regarded, no ambiguity is observable. Words, when found in a constitution, as well as in a statute, are to be understood in their ordinary signification. There is no canon of construction that makes it imperative, the words employed should be understood in any other or different sense than their common acceptation. Any other rule would defeat the plain meaning of such instruments. A constitution, like any other instrument, admits of no interpretation other than that which the common understanding places upon it, where no technical words are employed. It should not be hampered by judicial construction, so as to render it impracticable or inoperative. That which is plainly expressed admits of no construction.

Adopting these common sense principles as we would concerning the interpretation of any other written instrument, no great difficulty need be experienced in arriving at a solution of the questions discussed. It is plainly expressed, that the General Assembly may divide the State into judicial circuits of greater population and territory, in lieu of the circuits provided

for in the 13th section of the judiciary article of the constitution. The existence of that power is not denied, but the contention is, when may it be rightfully exercised. It is an undeniable principle, that unless prohibited, the General Assembly possesses plenary power in all matters of legislation. This leads us to inquire what limitation has the constitution imposed upon the legislature, as to the propriety or time of establishing a new system in lieu of the existing judicial circuits? Our conclusion is, absolutely none. There is no pretense there is any express inhibition, and if any exist, it must arise by implication or construction. That which is said to impose a limitation as to the time of exercising the express power granted, is that clause of section 13, which declares, "new circuits may be formed, and the boundaries of circuits may be changed by the General Assembly, at its session next preceding the election of circuit judges, but at no other time." It would be most singular, as well as strained construction to adopt, should it be held, those words found in a previous section, constituted a limitation upon the power of the General Assembly to divide the State into judicial circuits, in lieu of others, under the provisions of a subsequent section that confers express power for that purpose, subject to no restrictions or limitations. It has not the remotest relation to the exercise of that power by the legislature, and to so hold is simply to introduce into the constitution a limitation upon the power of the General Assembly which the framers of that instrument did not see fit to place there. Primarily, it had reference to changing the boundaries of circuits that should be formed under the 13th section, and no doubt was, and was so intended to be a restriction upon the legislature in that regard. Although not involved in this decision, we may express the opinion we entertain, that the clause referred to in section 13 might well be regarded as a restriction as to the time when the legislature might change the boundaries of circuits formed under the 15th section after they shall have been once established in lieu of the former system, but not before. Any other construction would involve the

merest absurdities, and might effectually forbid the exercise of express powers granted to the legislature.

The same section of the constitution that grants the power to establish one system of judicial circuits in lieu of another, makes it the duty of the General Assembly to provide for the election in such circuits, by general ticket, of not exceeding four judges, to hold the circuit courts therein. That was done in this act, by providing that the judges then residing in the territory comprising the circuits as defined in the act, should continue to exercise the office of circuit judge in their respective circuits until the expiration of their present terms of office, and by providing for the election of an additional judge in each circuit, whose term of office should expire within two years; and on the first Monday of June, 1879, and every six years thereafter, for the election, by general ticket, of three judges in each circuit. The several provisions as to providing for the election of judges in such circuits, answer every requirement of the 15th section, under which these circuits are formed. The 12th section of the judiciary article of the constitution, that fixes the term of office of judges of the circuit court at six years, in no manner affects the tenure of the office of the additional judge of the circuit court, elected under the act we are considering. Thereafter the term of office of all judges elected in such circuits will be six years. The general election for all judges of the circuit courts is fixed by the constitution to take place on a certain day, and they are to be elected for the same length of time, but, in projecting a new system, that is not practicable, nor is there anything in the constitution that makes it imperative to observe that clause of section 12. It might with equal propriety be insisted, judges elected to fill vacancies occasioned by death or resignation of the incumbent, would hold such office six years, because there is no express provision in the constitution for electing a circuit judge for a shorter period than six years. Such a proposition would be regarded as simply absurd. The objection taken is extremely subtle, and there is nothing in it that entitles it to any favorable con-

sideration.   Confining the general powers granted in a consti-
tution within such narrow limits, is to render it inoperative,
and to defeat all needful legislation under it.

An argument might be drawn, were it necessary to do so, to
sustain the validity of this statute, from the 11th section of
the article of the constitution, in relation to the judicial depart-
ment, that provides that after the year 1874, inferior appel-
late courts of uniform organization and jurisdiction may be
created in districts formed for that purpose.   The power to
create and establish such courts would seem to carry with it, by
necessary implication, authority to do that which would be
necessary to render them effectual for the purposes for which
they were to be created; otherwise it would be abortive to
attempt to create such courts.   It is indispensable the services of
circuit judges should be had to hold the appellate courts, when
created, and to that end it might be necessary to adopt, in lieu
of the former circuits, another system of judicial circuits, com-
prising a greater population and territory, in which a greater
number of circuit judges might lawfully be elected.   Only gen-
eral powers can be declared in a constitution, for it would be
impracticable to do more; and where power is granted to the
General Assembly for any specific purpose, it must be every-
thing necessary to make it effectual or requisite to attain the
end is implied.   It will be conceded it was lawful for the
General Assembly, at any session after 1874, to establish infe-
rior appellate courts in districts to be formed for that purpose,
and unless the legislature could at the same time provide for
having such courts held by circuit judges, and to adopt all
measures that might be necessary to secure that object, then
the authority to create inferior appellate courts would be a
barren grant, and might as well have been withheld.

But aside from this view, we think it was lawful for the
General Assembly at any time, in its discretion, to divide the
State into judicial circuits, comprising greater population and
territory, in lieu of the circuits provided for in section 13,
article 6, as the constitution has imposed no limitation or

restriction as to the time when that power may be exercised. Of course it is possible to form such circuits in lieu of existing ones but once, and as to what restrictions the constitution contains as to the time of changing of the boundaries of such circuits thereafter, is not a question involved in this case, nor has it any bearing on the decision. It is enough the General Assembly possesses unrestricted power, at any time it might deem the public exigency demands it, to adopt another system of judicial circuits in lieu of the existing one, and it is not now necessary to determine definitely when it may be lawful thereafter for the legislature to change the boundaries of such circuits. It will be time enough to pass upon that question when it is presented for decision.

A majority of the court are of opinion the demurrer to the plea was properly overruled, and the judgment of the circuit court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE WALKER: I am unable to concur in the reasoning or conclusion reached by this opinion.