PEOPLE ex rel. Oliver v. PHILIP KNOPF, County Clerk,
and
PHILIP KNOPF, County Clerk, v. PEOPLE ex rel. Oliver.

*Opinion filed October 18, 1902.*

1. STATUTES—*effect when journal fails to show that published act was properly passed.* A statute which bears the signatures of the proper officers of both houses and of the executive will be presumed to have become a law pursuant to the requirements of the constitution; but this presumption is overcome if the journal fails to show that the act was passed in the mode prescribed by the constitution.

2. SAME—*act of April 24, 1899, relating to election of judges in Cook county, never became a law.* The act approved April 24, 1899, entitled "An act to provide for the election and time of election of judges of the superior court of Cook county," (Laws of 1899, p. 152,) was changed, after its passage by the Senate, at some time unknown, and never having been returned to the Senate nor passed by it as changed did not become a law.

3. CONSTITUTIONAL LAW—*legislature cannot extend term of judges of superior court of Cook county.* The term of office of the judges of the superior court of Cook county is fixed by the constitution, and the legislature has no power to extend or diminish such term by changing the time for their election. (Const. of 1870, art. 4, sec. 28.)

4. SAME—*legislature has no power to change time of election fixed by constitution.* Under sections 12 and 14 of article 6 of the constitution the term of office of the judges of the circuit court of Cook county is six years, and the time for their election is fixed as the first Monday in June, 1873, and every six years thereafter, and the legislature cannot lawfully provide for an election at a different time or for a different term.

5. SAME—*right of legislature to increase number of judges of superior court of Cook county.* Since the constitution does not fix the time for holding the election for the office of judge of the superior court of Cook county, the legislature may at any time increase the number of such judges, when warranted by the population, and may also fix the time when the additional judges shall be elected, provided the term of office fixed by the constitution is not changed.

6. SAME—*right of legislature to increase number of circuit judges in Cook county.* The legislature has power, under the constitution, to increase the number of judges of the circuit court of Cook county when the population warrants such an increase, but the additional judges must be elected at the time fixed by the constitution.

7. SAME—*act of 1901, increasing number of judges in Cook county, is unconstitutional.* The provisions of the act of May 10, 1901, in so far

as they authorize the election of judges of the circuit court of Cook county for terms of about seven months and judges of the superior court for terms of about two years, are unconstitutional.

8. SAME—*invalid portion of act of 1901 cannot be stricken out.* The invalid portion of the act of 1901, which provides that the terms of office of the additional judges of the superior court of Cook county shall expire in 1904, cannot be stricken out so as to allow the constitutional provision as to such term to control and thus render the act valid, since the provision of the act requiring elections to be held in November, 1904, and every six years thereafter, could not be executed as intended by the legislature.

9. MANDAMUS—*when courts will compel holding of election.* If officers disregard their duty to give notice of an election, courts will by *mandamus* compel the holding of the election; but the neglect of such officers does not change the term of the office, and the same will continue as from the expiration of the former term.

WILKIN, J., and MAGRUDER, C. J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

FRANK ASBURY JOHNSON, and GEORGE MILLS ROGERS, for the relator.

PENCE & CARPENTER, and H. T. GILBERT, for relator on rehearing.

EDWIN W. SIMS, County Attorney, and FRANK L. SHEPARD, Assistant County Attorney, (JOHN BARTON PAYNE, and EDWIN M. ASHCRAFT, of counsel,) for respondent.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The People of the State of Illinois, on the relation of William Oliver, a legal voter of Cook county, filed the petition in this case in the circuit court of said county against Philip Knopf, county clerk, praying for a writ of *mandamus* directing said defendant to include in the notice of the election to be held on the Tuesday succeeding the first Monday in November, 1902, five judges of the superior court of said county, to be elected in accord-

ance with the provisions of an act approved April 24, 1899; also three judges of said superior court and three judges of the circuit court of said county, to be elected under the provisions of an act approved May 10, 1901.

The facts alleged in the petition are substantially as follows: That under statutes in force in 1893, Joseph E. Gary, Nathaniel C. Sears, George F. Blanke and John Barton Payne were at the election in November, 1893, elected judges of the superior court of Cook county for terms commencing on the first Monday of December, 1893, and continuing six years; that George F. Blanke died and Farlin Q. Ball was elected to fill his place; that John Barton Payne resigned and Marcus Kavanagh was appointed by the Governor to fill the vacancy, and that the terms of the four judges expired on the first Monday of December, 1899; that the act to provide for the election of judges of the superior court of Cook county, approved March 31, 1897, provided that four judges of said court should be elected at the election in November, 1899, and every six years thereafter, to fill said offices, and under the provisions of said statute the successors of said judges should have been elected at that time, but no judges were then elected; that at the election in November, 1895, Henry M. Shepard was elected a judge of said superior court for a term beginning on the first Monday of December, 1895, for a term of six years, and by said act of 1897 one judge was required to be elected at the November election in 1901 to fill said office, but no successor to said judge was then elected and he continues to occupy the office; that on April 24, 1899, there was filed with the Secretary of State an act of the legislature signed by the president of the Senate, the speaker of the House and the Governor, which was published as a law of the State of Illinois, providing that the twelve judges of the superior court of Cook county should be elected as follows: Six on the Tuesday after the first Monday of November, 1904, and every six years there-

after; four on the Tuesday after the first Monday of November, 1902, and every six years thereafter; one on said Tuesday after the first Monday of November, 1902, and every six years thereafter, and one on the first Monday of June, 1903, and every six years thereafter; that said provision for the election of four judges in November, 1902, applied to the offices held by the judges Joseph E. Gary, Nathaniel C. Sears, Farlin Q. Ball and Marcus Kavanagh, and the provision for the election of one judge at said time applied to the office held by Henry M. Shepard; that on July 14, 1900, the People of the State of Illinois, on the relation of Alexander J. Jones, filed in the circuit court of Cook county a petition for a writ of *mandamus* against Philip Knopf, county clerk, to compel him to include in the notice of the election to be held in November, 1900, four judges to succeed said Joseph E. Gary, Nathaniel C. Sears, Farlin Q. Ball and Marcus Kavanagh; that by the petition in said cause it was alleged that the terms of said judges expired on the first Monday in December, 1899, and their successors should have been elected in November of that year, under the act of 1897; that the act of 1899 never passed both houses of the legislature and never became a law; that the answer of the defendant, Philip Knopf, admitted the averments of the petition by the authority and at the request of the judges affected by the proceeding, and by such authority and request he consented that the writ of *mandamus* should be issued as prayed, and that judgment was entered and a writ issued, under which notice of election was given and said judges were elected as their own successors, and claim to hold office by virtue of said election; that an act was passed on May 19, 1901, in force July 1, 1901, providing for the election in November, 1902, of three additional judges of the circuit court of Cook county for terms to expire on the first Monday of June, 1903, and three additional judges of said superior court to expire on the Tuesday after the first Monday of November, 1904.

To the petition praying for the writ upon the facts so alleged the defendant made answer, admitting the election of the various persons as judges as set forth in said petition and the passage of the act of 1897, but denying that the act of April 24, 1899, filed with the Secretary of State and published by him, ever became a law or was passed by both houses of the legislature. He admitted the averments of the petition concerning the *mandamus* proceeding in 1900, and that the writ was issued and an election held in pursuance thereof in November, 1900. As to the office of judge of the superior court occupied by Henry M. Shepard, he admitted the facts alleged and that no election was held in November, 1901, but averred that as no election was held at the proper time he was now without power or authority to give notice of an election. He admitted the passage of the act of May 10, 1901, but alleged that it was in violation of the constitution in providing for an election of judges for a less term than that fixed by the constitution, and as to judges of the circuit court, at a different time. It was also claimed by the answer that the judgment in the *mandamus* proceeding of 1900 was *res judicata* as to the matters involved, and that the act of 1899 as passed was unconstitutional and void, as operating to extend the term of office of judges of the superior court.

There were three demurrers by the relator. The first to so much of the answer as set up the unconstitutionality of the act of 1899,—and this demurrer the court overruled; second, to so much of the answer as alleged the act of 1901 to be unconstitutional,—and this demurrer was sustained; and third, to so much of the answer as alleged that the judgment in the *mandamus* proceeding of 1900 was *res judicata* as to the questions involved therein,—and this demurrer was also sustained. An issue of fact was made as to the passage of the act of April 24, 1899, by replication, averring that said act did pass both houses of the legislature and became a law. A jury was

waived and that issue was tried by the court, resulting in a finding that said act never passed both houses and never became a law. The prayer of the petition was granted so far as it related to the election of a judge to succeed Henry M. Shepard, three additional judges of the circuit court and three additional judges of the superior court, and it was refused as to the election of four judges to fill the offices occupied by Joseph E. Gary, Nathaniel C. Sears, Farlin Q. Ball and Marcus Kavanagh. The writ was awarded requiring the defendant, Knopf, to give notice of the election of a judge of the superior court to fill the office now occupied by Henry M. Shepard, three additional judges of the superior court under the act of 1901, each for a term of six years, and three additional judges of the circuit court under said act, for terms from the election in November, 1902, to June, 1903. Both parties excepted to the decision and judgment and each prayed and perfected an appeal. The case is before us on these appeals of both parties.

The first act of the legislature with which we are concerned in this proceeding is the act approved March 31, 1897, and this is conceded by both parties to have been a valid enactment. It provided for the election of twelve judges of the superior court as set forth in the petition, one on the first Monday of June, 1897, and every six years thereafter; six in November, 1898, and every six years thereafter; four in November, 1899, and every six years thereafter, and one in November, 1901, and every six years thereafter. Each judge was to be elected for a term beginning on the first Monday of December next after his election and extending for a period of six years. (Laws of 1897, p. 216.) Under that act the terms of office of Joseph E. Gary, Nathaniel C. Sears, Farlin Q. Ball and Marcus Kavanagh expired on the first Monday of December, 1899, and the term of office of Henry M. Shepard expired on the first Monday of December, 1901.

The next act appeared in the published laws for 1899, and purported to be an act to provide for the election and time of election of judges of the superior court of Cook county and to have been approved April 24, 1899. The provisions of this act were, that the twelve judges of said superior court should be elected as follows:  Six in November, 1904, and every six years thereafter; four in November, 1902, and every six years thereafter; one in November, 1902, and every six years thereafter, and one in June, 1903, and every six years thereafter,—the term of each of said judges to be from the first Monday of December after his election for a period of six years. (Laws of 1899, p. 152.)  The court overruled relator's demurrer to that part of the answer which set up the unconstitutionality of this act, and thereby held it to be in conflict with the constitution.  Section 28 of article 4 of the constitution provides: "No law shall be passed which shall operate to extend the term of any public officer after his election or appointment."  So far as the act provided for the election of six judges in November, 1904, and one judge in June, 1903, it was the same as the act of 1897, and the elections would take place at the proper time; but the provisions for the election of five judges in November, 1902, was an attempt to continue persons in office in violation of this provision of the constitution.  The act would operate to extend the term of office of four judges from 1899 to 1902, and one judge from 1901 to 1902.  The term of these officers was fixed by the constitution, and the legislature could neither extend nor diminish it and had no control over it. (Mechem on Public Offices and Officers, sec. 387.)  The scope and purpose of those provisions were in direct conflict with the constitution.  By them the legislature attempted to postpone elections from the times when the offices of the judges would expire, to a later date.  They had no more power to continue the judges in office by this means than they would have had to provide that no election should be

thereafter held, so as to continue the incumbents of the offices therein during their lives.

On the trial of the issue of fact it was proved that the act was never passed by both houses of the legislature and that none of its provisions ever became the law. There was evidence to identify the journals of the two houses, the original bill, amendments, and the records in the office of the Secretary of State, from which these facts appear: A bill (No. 11) was introduced in the Senate which provided for the election of seven judges of the superior court in November, 1904, four judges in November, 1900, and one in November, 1902, each for a term of six years from the first Monday in December after his election. The bill was amended in the Senate, and as amended provided for the election of six judges in 1904, four in 1900, one in November, 1902, and one in June, 1903. The bill, as amended, was printed, and on March 28, 1899, was passed by the Senate. A bill called Senate bill No. 11 was received in the House of Representatives and was regularly read on three separate days and passed without amendment. The bill was changed at some time unknown. As it came from the House the emergency clause, which was a part of the original bill, had disappeared, and the bill provided for the election of four judges in November, 1902, instead of 1900, as it passed the Senate. The bill passed in the Senate was not the same that passed in the House, and it was never returned to the Senate or passed by it. No other documents, papers or records pertaining to the bill were to be found in the office of the Secretary of State, and it was proved that the bill never passed both houses in the form in which it was signed and approved and filed with the Secretary of State.

Section 10 of article 4 of the constitution provides: "Each house shall keep a journal of its proceedings, which shall be published. In the Senate at the request of two members, and in the House at the request of five

members, the yeas and nays shall be taken on any question, and entered upon the journal." Section 12 of the same article provides: "Bills may originate in either house, but may be altered, amended or rejected by the other; and on the final passage of all bills, the vote shall be by yeas and nays, upon each bill separately, and shall be entered upon the journal." Section 13 of that article provides: "Every bill shall be read at large on three different days, in each house; and the bill and all amendments thereto shall be printed before the vote is taken on its final passage."

It is contended by relator that where the constitution is silent as to whether a particular act shall be entered on the journal it is left to the discretion of the Senate or House to enter it or not, and that the court must presume that such an act was done, unless the journal affirmatively shows that it was not done. On this ground it is urged that we should presume the bill introduced in the Senate was amended and printed in the form in which it appears in the published laws, and that said bill is the one on which the Senate voted on its final passage. The rule is, that an act which bears the signatures of the proper officers of the two houses and of the executive will be presumed to have become a law pursuant to the requirements of the constitution, but in *Spangler* v. *Jacoby*, 14 Ill. 297, it was decided this presumption may be overthrown; that if the facts essential to the passage of a law are not set forth in the journal the conclusion is that they did not transpire, and if the journal fails to show that the act was passed in the mode prescribed by the constitution the presumption is overcome and the act must fail. The same rule was declared in *Turley* v. *County of Logan*, 17 Ill. 151, where it was held the fact that a law appears on the statute book is not conclusive that it was passed by a constitutional vote, but the journal may be examined to ascertain the fact. In that case it was alleged that an act was not constitutionally passed, not

having been read on three several days nor such reading dispensed with, and it was said that the journals should show the readings and the passage of the law by a constitutional vote. There was a question very like the one in this case in *Prescott* v. *Board of Trustees*, 19 Ill. 324. A bill which had passed the Senate was reported to the House, where it was taken up and read a first and second time and referred to a committee. It was reported back and ordered to a third reading, at which stage it was amended by striking out the third section. The bill, as amended, was passed. No further action was taken in the Senate, but the bill was laid before the Governor and approved by him and published as a law. The court said they would look behind a printed law to the journals, and that the whole act was a nullity, the remainder of the bill besides the third section having no vitality because it was not passed as amended. Again, a bill bearing the signatures of the presiding officers and the approval of the Governor was held in *People* v. *Starne*, 35 Ill. 121, not to be a law, because it did not appear from the journal of the House to have passed that body. There were two bills with precisely the same title but different provisions and numbers, and the journal of the House failed to show that the bill in controversy ever passed the House. These cases are decisive of the question, and the act having never been passed as required by the constitution was a nullity. The act of 1897 remained in force, and the terms of office of the judges of the superior court expired according to its provisions.

The act approved May 10, 1901, in force July 1, 1901, entitled "An act to provide for additional judges of the circuit and superior courts of the county of Cook," is as follows: "That, as it appears by a canvass of this State, commonly known as the Federal census, taken in the year A. D. 1900, pursuant to law, that the number of inhabitants of the county of Cook is over one million eight hundred thousand (1,800,000), and that thereby said

county is entitled to additional judges by section 23 of article 6 of the constitution of this State; therefore, the number of judges of the circuit court of Cook county, be, and hereby is, increased from fourteen (14), its present number, to seventeen (17), and the number of judges of the superior court of Cook county, be, and hereby is, increased from twelve (12), its present number, to fifteen (15). On the Tuesday after the first Monday in November, A. D. 1902, there shall be elected three judges of the circuit court of said county of Cook, and three judges of the superior court of said county of Cook. The terms of office of the said additional judges of the said circuit court shall expire on the first Monday of June, A. D. 1903, upon the election and qualification of their successors in office, and upon said first Monday of June, A. D. 1903, and every six years thereafter, there shall be elected, at the same time and in the manner as the other judges of the circuit court, three judges of said circuit court, successors in office of the judges by this act authorized to be elected. The terms of office of the said additional judges of the said superior court shall expire on Tuesday after the first Monday in November, A. D. 1904, upon the election and qualification of their successors in office, and upon the said Tuesday after the first Monday in November, A. D. 1904, and every six years thereafter, there shall be elected, at the same time and in the same manner as the other judges of the superior court, three judges of said superior court, successors in office of the judges by this act authorized to be elected." Laws of 1901, p. 130.

The defendant, Philip Knopf, county clerk, refused to include in the notice of the election to be held in November, 1902, three judges of the circuit court to be elected for terms expiring in June, 1903, and three judges of the superior court to be elected for terms expiring in November, 1904, under said act, and this proceeding for *mandamus* is to compel him to include such judges in the

notice of the election. The constitutionality of the act, so far as it provides for the election of judges of the circuit court for terms of about seven months and judges of the superior court for terms of two years, is therefore the only question involved in the case. The validity of the act in other respects is not involved in the question whether the relator has shown a legal right to the writ asked for, and this is the only question considered or decided.

The provisions of the constitution on the subject are as follows: In section 12 of article 6 is this provision: "The terms of office of judges of circuit courts shall be six years." Section 14 of that article is as follows: "The election for judges of the circuit courts shall be held on the first Monday in June, in the year of our Lord 1873, and every six years thereafter." Section 23 of the same article is as follows: "The county of Cook shall be one judicial circuit. The circuit court of Cook county shall consist of five judges, until their number shall be increased, as herein provided. The present judge of the recorder's court of the city of Chicago, and the present judge of the circuit court of Cook county, shall be two of said judges, and shall remain in office for the terms for which they were respectively elected, and until their successors shall be elected and qualified. The superior court of Chicago shall be continued, and called the superior court of Cook county. The General Assembly may increase the number of said judges, by adding one to either of said courts for every additional 50,000 inhabitants in said county, over and above a population of 400,000. The terms of office of the judges of said courts hereafter elected, shall be six years." Section 32 of said article has the following provision: "All officers provided for in this article shall hold their offices until their successors shall be qualified. * * * Vacancies in such elective offices shall be filled by election; but where

the unexpired term does not exceed one year, the vacancy shall be filled by appointment, as follows: Of judges, by the Governor."

The plain and ordinary meaning of these provisions of the constitution, so far as they relate to judges of the circuit court of Cook county, seems to be that the term of office of such judges shall be six years; that the election for judges shall be held on the first Monday of June, 1873, and every six years thereafter; that at such election five judges shall be elected, unless the legislature shall see fit to increase the number based on increased population, and if so, the increased number shall be elected at such elections. Where the constitution fixes the time for holding an election a different time cannot be fixed by the legislature. (10 Am. & Eng. Ency. of Law, —2d ed.—680.) By this act the legislature attempted to provide for an election at a different time and for a different term. The constitution establishes certain times for the election of judges of the circuit court for certain fixed periods of six years each, but the number to be elected above five was left to the discretion of the legislature, depending upon the population of the county. We think it clear that the people never intended that the legislature should have power to do more than increase the number of judges to be elected at the time fixed by the constitution.

Relator relies upon the reasoning in the case of *People v. Wall,* 88 Ill. 75, to support the claim that the legislature could provide for an increase of judges of the circuit court with a different term and to be elected at a different time from those fixed by the constitution. We do not regard that decision as applicable to the facts of this case nor its authority as sustaining the provisions of this act. The constitution provided that the State, exclusive of the county of Cook, should be divided into judicial circuits and one judge should be elected for each circuit, but by section 15 of article 6 it was provided that the

legislature might substitute a new system by dividing the State into judicial circuits of greater population and territory, and providing for the election therein of not exceeding four judges, who should hold the circuit courts in the circuits for which they should be elected in such manner as might be provided by law. There was no limitation upon the time when such new system, if adopted, should be put into operation. The court said that the legislature were invested with discretionary power to adopt the new system, and as to the time when it might be established the constitution was silent. The existence of the power was not denied, and the court found no limitation as to its exercise when the legislature might see fit. That is not so as to this matter, in which no discretion is left to the legislature, except to increase the number of judges to be elected when an election is to be held under the constitution. The necessity for the adoption of a new system of judicial circuits might arise at any time, and the makers of the constitution must have had that fact in view; but an argument of that kind can have no force in this case, for the reason that the increase of judges might be made in the superior court whenever required.

Counsel for relator also say that section 23 of the constitution is a special provision relating only to the circuit and superior courts of Cook county while the other sections mentioned are general, and that the special provision should prevail over those which are general. Conceding the rule thus invoked, it is sufficient to say that said section 23, relating to said circuit and superior courts of Cook county, expressly provides that "the terms of office of the judges of said courts, hereafter elected, shall be six years." It thus appears that the length of the terms of all judges of both courts of Cook county, elected under the provisions of that section, is definitely fixed at six years. No authority is found in either the general or special provisions warranting the legislature

198—23

in fixing the length of the terms of the judges of either court differently, but, on the contrary, the power of the legislature in that regard is restricted by the express terms of both general and special provisions. Neither is the construction contended for necessary to make effective the power to increase the number of judges of said courts. No difficulty is perceived in adopting such legislation as would provide for the election of judges for the terms fixed by the constitution, and, so far as judges of the circuit court are concerned, at the time prescribed by that instrument. The provision of the constitution is, that the legislature may give to Cook county an additional judge for each increase of 50,000 inhabitants, and may do it by adding such judge either to the circuit court or to the superior court. The constitution does not fix the time when judges of the superior court may be elected, but simply fixes the term for which they are to be elected. As to judges of the circuit court it fixes both the time and the term. The addition of a judge to the superior court, if deemed wise, may be made at any time, provided the legislature do not interfere with the term fixed by the constitution, and that court has the same jurisdiction as the circuit court. Both are of the same class, differing only in name. *People* v. *Raymond*, 186 Ill. 407.

The same conclusion is inevitable as to the provision of the act of 1901 for the election of three additional judges of the superior court for terms of two years. It is clearly and unmistakably opposed to the provisions of the constitution. The legislature had power to provide for an increase of judges of the superior court, based upon an increase of population, whenever they might consider it necessary, and to provide when such additional judges should be elected. Both of these questions were committed by the people, in the adoption of the constitution, to the legislative discretion, but the term for which judges should be elected was not intrusted to such

discretion and the legislature had no power over it. The people determined that question for themselves and fixed the term at six years. The legislature had no authority to inaugurate or put in effect a scheme opposed to that provision, by which judges should be elected for two years instead of six.

Counsel for relator have also argued that the provision for the election of three judges of the superior court in November, 1902, is valid, notwithstanding the invalidity of the provision that their terms shall expire in November, 1904, and that the length of their terms would be regulated by the constitution, and they would hold for six years, contrary to the provisions of the act. They say the provision as to the term may be struck out and there would remain a complete and valid enactment, and the judges would be elected for the term of six years fixed by the constitution. To so hold would be to defeat the plain intention of the legislature as expressed in the act and to bring its provisions into conflict with each other. The legislative intention was that there should be an election, for the constitutional term of six years, on the Tuesday after the first Monday of November, 1904, and every six years thereafter; and that is the same time that six other judges of the superior court are required to be elected under other acts. It was as much a part of the legislative plan that judges should be elected in 1904 for six years as that there should be an election of judges in 1902. It is true that part of a statute may be unconstitutional and void and the residue constitutional and valid, and if, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, it must be sustained; but in this case, if the provision as to the terms is stricken out and the constitutional provision substituted or made to control as to the terms, the remainder cannot be executed according to the legislative intent. In that case there

could be no elections in November, 1904, and every six
years thereafter, as intended by the legislature.

The proceedings in *mandamus* in the circuit court in
1900, in pursuance of which the four judges were elected
in November of that year, were set up in the answer,
and the judgment was alleged to be *res judicata* as to the
matters therein involved. The court sustained a demur-
rer to that part of the answer. It appears from the
proceedings set forth at large in the petition, that the
case was one in which there was no issue of fact and no
contest concerning the law. It was devised for the al-
leged purpose of compelling the county clerk to do that
which, by his answer, he requested the court to require
him to do. He answered that the judges interested re-
quested him to admit the facts and consent to the issue
of the writ, and he did so. There was no litigation in
fact, and no contest, but the suit was instituted merely
for the purpose of having the judgment entered. The
proceeding was ostensibly on the part of the public, but
nothing was litigated and there were not two sides to
the controversy. The judgment is not binding upon the
public, and it is therefore argued that the election held
in November, 1900, under the writ of *mandamus*, was void.
Generally speaking, the authority to hold an election at
one time will not warrant an election at another, and an
election must be held at the time fixed by the law or by
some person authorized by the law to fix it. Laws fixing
the time at which an election shall be held are matters
of substance, and must be substantially observed or the
election will be void. (Mechem on Public Offices and
Officers, sec. 178.) Under the law the election should have
been held in November, 1899, but the officers charged with
the duty of giving notice of the election failed to give
it. In such a case, where the duty is clearly obligatory
and has been disregarded by the officer charged in law
with its performance, courts will interfere by *mandamus*
to compel the holding of an election. (*People* v. *Town*

*of Fairbury,* 51 Ill. 149; 10 Am. & Eng. Ency. of Law,—
2d ed.—805; High on Ex. Legal Rem. sec. 401.) The
term of the judges was fixed by the constitution, and the
time of the election, as, well as the term, was fixed by
the act of 1897. The county clerk neglected to perform
his duty, and *mandamus* would lie for the purpose of
enforcing such performance. If *mandamus* would lie to
compel the county clerk to include in the notice of the
general election the election of judges, it could only be
because he had the power and it was his duty to perform
the act. If he could be compelled to give the notice, it
was his duty to do so without the writ. The election in
November, 1900, was a regular election provided by the
statute. The judges in office were authorized by the con-
stitution and law to hold over and discharge the duties
of their offices temporarily, until judges should be elected
and qualified to fill such offices. We do not see that it
makes any difference whether persons are being contin-
ued in office by their own neglect to call an election,
or whether they are kept in office by the action of some
other person in failing to give notice of the election. In
either case the paramount public interest would be dis-
regarded and the officers be kept in power by their own
act or the act of some other official in their interest.
Public rights should not be sacrificed by the neglect of
a public official to discharge his duty, and any construc-
tion of the law which would prevent the election of judges
at the next regular election in the district would have
that effect. '

We are of the opinion that the election of four judges
in 1900, at a regular election fixed by law, was legal and
valid, and that said judges were lawfully elected to fill
the remainder of the term of six years fixed by law, be-
ginning on the first Monday of December, 1901. Includ-
ing the election of such judges in the notice at that time
was the performance of a purely public duty resting up-
on the county clerk, which had before that time been

neglected by him. Under the law their successors are to be elected at the November election in 1905. The neglect of the clerk would not operate to create a new term or extend the former one. The term of office of Henry M. Shepard expired on the first Monday of December, 1901, when by the law a new term began, and the county clerk, in like manner, neglected the performance of his duty to include in the notice of the election to be held in November, 1901, the election of his successor.

Our conclusion is, that the circuit court erred in awarding the writ so far as it required the defendant to give notice for the election of three additional judges for the circuit court and three additional judges for the superior court, and that the judgment was correct so far as it related to the election of a judge to fill the office now occupied by Henry M. Shepard. The judge so elected will hold his office for the remainder of the term of six years, which began on the first Monday of December, 1901. The judgment is reversed and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.
                                   *Reversed and remanded.*

Mr. JUSTICE WILKIN, dissenting:

Upon a re-consideration of the questions involved in this case I am convinced that our former conclusion was wrong, and while the modified opinion holds the act of 1901 invalid only in so far as it provides for the election of the additional judges for the short terms, the reasoning, as I understand it, must finally lead to holding the whole act unconstitutional and void.

The constitution of 1870, by sections 12 and 14 of article 6, provides for uniform terms of six years for all judges of circuit courts, and fixes the time for their election on the first Monday in June, 1873, and every six years thereafter. Those provisions were intended to apply to all circuit judges elected under the provision of that instrument at the time of its adoption. It was, however,

realized that additional circuit judges would be neces-
sary in the future, and hence, by section 15 of the same
article, the General Assembly was authorized to divide
the State into judicial circuits of greater population and
territory than those fixed by section 13, "and provide for
the election therein * * * of not exceeding four judges,"
the additional judges to hold the circuit courts in the
circuits for which they were elected, in the manner pro-
vided by law.   There was no limitation as to the time
when such an act might be passed.  It also, by section 23,
provided that the General Assembly might increase the
number of judges of the circuit and superior courts of
Cook county "by adding one to either of said courts for
every additional 50,000 inhabitants in said county, over
and above a population of 400,000." No time was limited
within which such change might be made.

U̇nder section 15 the act of 1877 was passed creating
larger circuits and providing that the judges of the cir-
cuit courts then in office should be judges for the respec-
tive circuits in which they resided, and that on the first
Monday in August of the year 1877 there should be elected
in each of said enlarged circuits *one additional circuit judge.*
It was also further provided that the terms of office of
the judges elected under the act on the first Monday in
August, 1877, should expire on the first Monday of Au-
gust, 1879, thus fixing their terms of office at two years;
also, that on the first Monday of June, 1879, there should
be elected in each of said circuits three judges whose
terms of office should be six years, and that every six
years thereafter there should be elected three judges of
the circuit court whose terms of office should be six years.

In 1887, under the provision of section 23, the school
census for the year 1886 having shown the inhabitants of
Cook county to be of the requisite number to entitle the
county to six additional judges, it was enacted that an
election should be held on the first Monday of June next
after the act should take effect, (that is, in June, 1887,)

for six additional judges of the circuit court, whose terms of office should expire upon the first Monday in June, 1881, upon the election and qualification of their successors; and by section 2 of that act it was provided that upon the first Monday in June, 1881, and every six years thereafter, there should be elected at the same time and in the same manner as the other judges of said circuit court, six judges, successors in office of the judges by the act authorized to be elected.

Again, in 1893, the school census of 1892 showing the population of the county to be over 1,500,000, entitling the county to additional judges, it was provided that the number of circuit judges be increased to fourteen and the judges of the superior court to twelve, thus adding three judges to each of said courts. By section 2 of the same act it was provided that on Tuesday after the first Monday in November, 1893, these additional judges should be elected, and by section 3 that the additional superior judges should hold their offices for six years and until their successors were elected. By section 4 the terms of office of the three additional circuit judges were to expire on the first Monday of June, 1897, (a period of something over three years,) upon the election and qualification of their successors in office, and upon said first Monday in June, 1897, and every six years thereafter, there be elected, at the same time and in the same manner as the other judges of the circuit courts, three successors in office of the circuit judges by the act authorized to be elected. Judges were elected in pursuance of and in conformity with the provisions of both of said last mentioned acts, and they and their successors have held office and transacted business in said court ever since, the constitutionality of the acts being unchallenged.

After the passage of the act of 1877 and the election of the additional judges as therein provided, the question arose among the objections to the validity of the law whether the legislature had the power to provide

for terms of office of the additional judges for a term of less than six years, it being insisted that the act was violative of section 12 of article 6 of the constitution in that regard. The question came before this court in the case of *People* v. *Wall*, 88 Ill. 75, and it was held that the twelfth section did not affect the tenure of office of the additional judges. In the opinion the following language is used (p. 80): "The general election for all judges of the circuit courts is fixed by the constitution to take place on a certain day, and they are to be elected for the same length of time; but in projecting a new system, that is not practicable, nor is there anything in the constitution that makes it imperative to observe that clause of section 12. * * * The power to create and establish such courts would seem to carry with it, by necessary implication, authority to do that which would be necessary to render them effectual for the purposes for which they were to be created, otherwise it would be abortive to attempt to create such courts; * * * and where power is granted to the General Assembly for any specific purpose it must be everything necessary to make it effectual or requisite to attain the end is implied." That decision was followed in *People* v. *Board of Supervisors*, 100 Ill. 495, holding an act of the legislature of 1881 valid which extended the terms of office of certain county officers one year, as was claimed, in violation of section 28 of article 4 of the constitution, and in that case it was said (p. 506): "In the case of *People* v. *Wall*, 88 Ill. 75, where the constitutionality of a statute was called in question upon the ground that it provided for the election of certain judges of circuit courts in 1877 for a term of two years while the constitution declared that the terms of office of judges of circuit courts shall be six years, it was held by this court that this general provision for terms of six years had no application to legislation enacted to accomplish a change in the circuit system, which change was provided for in the constitu-

tion, but as to the mode of accomplishing the change the constitution was silent. So the amendment of 1880 having provided for a change in the times for the election of certain county officers and for a change of the terms of certain of them, being silent as to what shall be done in bringing about such change prior to November, 1882, and the change being such that it cannot practically be brought about except by doing, prior to the time of which the amendment speaks expressly, one of two abnormal things, and which things are each in contravention of other general provisions of former parts of the constitution, we think that such general provisions plainly can have no application to such legislation as may be had in the necessary attainment of the object and end authorized by the amendment itself."

In *Knickerbocker* v. *People*, 102 Ill. 218, in which the constitutionality of the act creating probate courts in counties of 70,000 or more population was in question, we find this language (p. 224): "The constitution having authorized the legislature to establish one of these courts in each county of the State, subject to the limitation with respect to population, and having fixed no time for the exercise of such authority, the clear and necessary implication is that the framers of the constitution intended the legislature should determine for itself when and under what circumstances it would exercise the authority conferred. It is conceded by counsel on both sides that this as well as all other provisions of the constitution must be read and construed, if it can be done without involving an inconsistency or absurdity, in the popular and ordinary sense in which the people understood it when voting for it. Applying this test to the provision in question, we have no doubt of the correctness of the construction we have given it." And again: "Holding, then, as we do, it was the intention of the framers of the constitution that the legislature, in giving effect to the section under consideration, should be guided entirely by

the wants and necessities of the people with respect to such courts in the several counties in the State having the requisite population, it follows the other provisions of that instrument must be so construed as to give effect to that intention," etc.

The acts of 1887 and 1893 were passed after the fore-going decisions were rendered, both of which are unconstitutional and void if the act of 1901 must be so held. It is true that the facts in the *Wall case* differ from those involved here; but I am unable to see wherein the principle there decided and subsequently followed is not conclusive as to the validity of the foregoing several acts, including that of 1901. Section 23 confers the power upon the legislature, in its discretion, at any time, (the population being sufficient,) to increase the number of judges of Cook county "by adding one to either of said courts," and to give practical effect to the exercise of that power,—*i. e.*, to increase the number of judges at such time as the legislature deems necessary for the dispatch of the business of the courts,—the general limitations in sections 12 and 14 cannot be applied. It may be that by eliminating the words "by adding one to either of said courts," and substituting therefor "by adding one to the superior court," the necessities of the county might be provided for; but the power is given, by the express language of the section, to add to the judges of the circuit court, and I know of no rule of construction which will justify changing the language of the section in order to hold the act invalid. On the contrary, every provision of the constitution and every act of the legislature must be so construed as to uphold the law, if it can reasonably be done. I might concede that by the strictest construction the act could be held void, but I contend that to do so would defeat the clear intention of the framers of the constitution and the people who adopted it.

Importance is attached to the last sentence of the twenty-third section, which is: "The terms of office of

the judges of said courts hereafter elected, shall be six years." That limitation does not necessarily apply to the additional judges provided for, but was intended to fix the general terms of office for all the judges thereafter elected for said courts, and except as to the superior judges it adds nothing whatever to the force of section 12. It is, in other words, a provision applying to the regular terms of office of the judges of the superior and circuit courts, and, as was said in the *Wall case,* in no manner affects the tenure of office of the additional judges authorized in the body of that section. The act of 1901, as well as the acts of 1887 and 1893, by the provision for short terms, simply intended to bring the new order of things in Cook county into harmony with the general judicial policy of the State as to the time of electing circuit judges and their uniform terms of office, and whether the question should be treated as purely a political one or not, within the rule announced in *People* v. *Board of Supervisors, supra,* certainly no private rights can be injuriously affected by sustaining their validity.

I have already extended this opinion beyond its intended limits, and in support of the views announced and as in harmony with the previous decisions of this court will simply cite, without comment, *State* v. *Askew,* 48 Ark. 82, and cases there cited; *Haggerty* v. *Arnold,* 13 Kan. 367; *Wilson* v. *Clark,* 63 id. 505; *State* v. *Andrews,* 67 Pac. Rep. 870; *State* v. *Emerson,* 39 Mo. 80.

As to the superior judges, whether it was necessary, or even wise, to provide for a short term is immaterial. I think the legislature had the power to do so.

Mr. CHIEF JUSTICE MAGRUDER concurs in the dissenting views of Mr. Justice WILKIN.