People of the State of Illinois ex rel. Ralph E. Sinsheimer, Appellant, v. Margaret S. Pierson, Town Clerk, Appellee.

Gen. No. 42,305.

574

Opinion filed May 5, 1943.

EUGENE R. WARD, of Chicago, for appellant.

EDMUND W. BURKE, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On December 4, 1941, relator a taxpayer of New Trier Township, Cook county, Illinois, filed a petition for a writ of mandamus against Margaret S. Pierson, as township clerk of that township, asking that she be directed to call a special election to fill two vacancies in the office of constable. Answering the defendant denied that she is subject to the writ, contending she has the discretion to determine whether vacancies existed, and in the exercise of that alleged discretion she has determined none existed, due to the fact that two constables elected four years previously are holding over; that there are an adequate number of constables to transact all of the business pertaining to the office of constable; that to hold a special election for the purpose of electing two additional constables would cost the taxpayers of the township about $3,000, and that the election would not accomplish any good purpose. The parties stipulated as to the facts. Following arguments on the law, the court denied the prayer for the writ of mandamus and entered judgment accordingly. Relator appeals.

At the election for township officers of New Trier Township held on Tuesday, April 1, 1941, Anton Engels, John McKeighan, William Oman, Walter Brown and Peter Lucchesi were duly elected to the office of constable for that township. The term of office of each of these men began on the first Monday of May, 1941, to continue for four years "and until their successors are elected and qualified." (Sec. 1, Art. I, ch. 79, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 71.001]). Walter Brown and Peter Lucchesi, two of the successful candidates, failed to file their oaths of office with the county clerk, and also failed to execute and deliver their bonds to the county clerk within 20 days after

their election. Of the five men so elected to the office of constable on April 1, 1941, three, namely, Anton Engels, John McKeighan and William Oman, were reelected, having held said office for the four year term beginning on the first Monday of May, 1937. These three men took their oaths and executed and delivered their bonds to the county clerk, are duly qualified and are now acting as constables. Clarence Schafahen and Alfred Schempp were elected as constables on the first Monday of April, 1937, and duly qualified and acted as constables for the term beginning on the first Monday of May, 1937. These two men were not candidates for re-election on April 1, 1941. As Walter Brown and Peter Lucchesi failed to qualify for the term commencing on the first Monday of May, 1941, Clarence Schafahen and Alfred Schempp, the incumbents, continued to discharge the duties of the office of constable and are at the present time discharging such duties as hold-over constables. The parties have stipulated that at the present time there are an adequate number of constables to transact all of the business pertaining to the office of constable, and that the cost necessary and incident to holding a special election for the purpose of electing two additional constables would be approximately $3,000. We take the stipulation to mean that with the two hold-over constables there are an adequate number of constables to transact all of the business pertaining to the office of constable. In her brief defendant states that ''Walter Brown and Peter Lucchesi, it is true, failed to file their oaths of office and bonds with the County Clerk within the 20 day period as directed by the statute, but since that time both of them have repeatedly offered to file their bonds and oaths of office with the Honorable Michael J. Flynn, County Clerk of the County of Cook in the State of Illinois, but he has arbitrarily refused to accept them.'' No such allegation is made in the petition, nor have the parties stip-

ulated to that effect. So far as the record shows, neither Brown nor Lucchesi has made any attempt to file his oath of office with the county clerk, or to execute and deliver his official bond to the county clerk.

Section 21 of Article VI of the Constitution of 1870 provides that constables shall be elected in and for such districts as are, or may be, provided by law. Section 32 of that article provides that the officers mentioned therein shall hold their offices until their successors shall be qualified, and that the terms of office of such officers, where not otherwise prescribed in the article, shall be four years. This section also provides that vacancies shall be filled by election, but where the unexpired term does not exceed one year the vacancy, where not otherwise provided, shall be filled by the board of county commissioners. Under sec. 1, ch. 79, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 71.001], a town having 5,000 inhabitants or over is required to elect five constables. As New Trier Township has a population well over that figure, it comes within the classification requiring the election of five constables. Section 8 requires that every justice of the peace and constable, before entering upon the duties of his office, shall take, subscribe and file in the office of the county clerk, the oath of office prescribed in the constitution. Section 9 provides that every justice of the peace or constable, before entering upon the duties of his office, shall execute and deliver to the county clerk within 20 days after his election, a bond, to be approved by the county clerk, with two or more good and sufficient securities in the sum of not less than $2,000, nor more than $10,000, conditioned that he will justly and fairly account for and pay over all moneys that may come to his hands under any judgment or otherwise, by virtue of his said office; and that he will well and truly perform every act and duty enjoined upon him by the laws of this State, to the best of his skill and ability. Section

10 provides that "if any justice of the peace or constable shall not, within twenty days after his election, or appointment, take the oath and give bond, as aforesaid, such justice or constable shall not be permitted after that time to qualify, but the office shall be considered as vacant and filled accordingly." Section 12 declares that certificates of election shall be granted to constables-elect by the county clerks, which shall be sufficient to authorize them to act. Section 13 provides that the county clerk shall keep a book in which he shall enter the name of every justice of the peace and constable sworn into office, and the time of his being sworn into office, together with the date of his commission or certificate. Section 7 provides that "when a vacancy occurs in the office of a justice of the peace or constable by death, resignation, removal from the town or precinct, or other cause, if the unexpired term exceeds one year, his office shall be filled by special election; and it shall be the duty of the town clerk in counties under township organization, . . . in case of such vacancy, to issue his order to the judges of election of the proper town or precinct requiring them, on a certain day therein named, not less than twenty days from the issuing of such order, to hold an election to fill such vacancy; and at the same time the county or town clerk shall deliver to such judges three copies of a notice of such election, two of which notices shall be posted up in such town or precinct in two public places therein; and the election shall be held pursuant to such order and conducted as other elections."

Relator insists that on failure of a constable-elect to file his oath or bond with the county clerk within 20 days after his election, his office is considered vacant, and it then becomes the duty of the town clerk to call a special election. The defendant answers that the provision requiring every justice of the peace or constable to file his oath and execute and deliver his

bond within 20 days after his election is mandatory only as to the giving of the bond, but as to the precise time of filing, it is merely directory, and as a consequence may be filed subsequent to the 20-day period as set forth in the statute. We will first determine whether a vacancy exists. Defendant relies upon the case of *City of Chicago v. Gage,* 95 Ill. 593. Gage, a former city treasurer, and his sureties were sued on his official bond. A defense interposed was that under the city charter the treasurer was required to qualify by filing his bond within 15 days after notification of his election, and it was contended that Gage, not having filed his bond within the time limited, the office became vacant and thereupon all liability under the bond terminated. It was conceded that Gage failed to file his bond within the 15 days. Neither the mayor nor the city council declared the office vacant or appointed a successor. When, after the 15 days had elapsed, he did present his bond, it was accepted and approved. The Supreme Court concluded: "We do not think the sureties have the right now to set up in defeat of the bond that it was not accepted and approved and filed with the city clerk within fifteen days prescribed in the charter." The court also stated (622):

"It is conceded that after the expiration of the fifteen days the mayor and council would have been fully justified in refusing to accept and approve this bond, because of this default; and in appointing Gage's successor, as in the case of *Ross v. The People,* 78 Ill. 375. Had they so elected, Gage's right to the office would have been forfeited, and a person appointed who would give a bond."

It will be observed that by the admission of the defendant in her brief in the instant case, the county clerk refused to accept the oath or the bond. Thus, the *Gage* case appears to support the asserted position

of the county clerk. In the case of *People v. Percells,*
8 Ill. (3 Gilm.) 59, an information in the nature of
a *quo warranto,* it appears that Percells was elected
as a justice of the peace on October 25, 1845; that he
filed his official bond in due time, but omitted to recite
in the condition of the bond the language; "and that
he will well and truly perform all and every act and
duty enjoined on him by the law of this State, to the
best of his skill and abilities." On December 24,
1845 the defendant filed a new bond with other sure-
ties and this bond included the words that had been
omitted from the previous bond. The new bond was
filed after the 20 days within which the justice was
required to file his bond. The answer of the defend-
ant admitted the statements of the information to be
true. Plaintiff demurred to the answer. The court
overruled the demurrer and dismissed the information.
The plaintiff appealed. The Supreme Court held that
the first bond was defective in substance and was not
the bond required to be filed within the meaning of
the statute. The defendant also contended that the
filing of the additional bond, even though after the 20
days fixed by the statute, was a sufficient answer to
the information. The Supreme Court said (63):

"The filing of a bond with the proper and legal con-
ditions, more than twenty days subsequent to the elec-
tion, confers no right upon the defendant to hold the
office. Immediately upon the expiration of the twenty
days, by express law, it became vacant. It could only
be filled by an election. The execution and filing of
the bond, with substantially such conditions as the
statute prescribes, constituted a condition precedent
to the defendant's right to hold the office. And al-
though the bond filed by him after the vacancy had
occurred, will be obligatory upon him and his secu-
rities as an indemnity against any misconduct of his
under color of office, it cannot operate to invest him
with an office which had become vacant through his
negligence or inattention.

"Neither is it true, as is contended by the defendant's counsel, that the approval of the bond by the clerk of the County Commissioners' Court is such a judicial act as is conclusive of the defendant's right. The clerk may decide judicially what shall be the penalty of the justice's bond at any sum between five hundred and one thousand dollars, and also upon the sufficiency of his securities. The conditions of the bond are fixed by law and are beyond his discretion or control."

The judgment of the circuit court was reversed and judgment entered in the Supreme Court finding the defendant guilty of usurping and intruding into, and unlawfully holding, and exercising the office of justice of the peace and that he should be ousted from the office. It does not appear from the *Percells* case whether the relator was the hold-over justice of the peace. In the case of *Greening ex rel. Rowe v. Barnes,* 355 Ill. 99, it appears that defendant was elected a justice of the peace for the town of Capital in Sangamon county in April 1929. At the election held in April 1933 he was a candidate to succeed himself, but was defeated for re-election by Lawrence A. Gaffney. Gaffney failed to qualify. The county clerk and *ex officio* town clerk determined that by reason of his failure to qualify a vacancy existed, and issued a call for a special election. At the special election W. M. Rowe was successful. He was declared elected to fill the unexpired term and was commissioned by the Governor on June 13, 1933. The State's Attorney, in behalf of Rowe, filed an information in *quo warranto* against the incumbent Barnes. The Supreme Court, in disposing of Barnes' plea, said (101):

"It is appellant's ingenious argument that because the constitution provides that the tenure of office shall continue until his successor is qualified he has at all times been lawfully holding the office since the expiration of his regular term, and that because he has been

holding the office during this time there has been no vacancy which would be sufficient to justify a special election. . . . It is his contention that inasmuch as Gaffney failed to qualify, he, the appellant, continued lawfully in the office, and that no special election could be called because there was no vacancy. The mere statement of the contention indicates that it is far more ingenious than meritorious. Ingenious as it is, however, it overlooks certain points. It overlooks the point that Gaffney was elected for the regular term, and that the vacancy is in the term for which Gaffney was elected and not of appellant, whose term had expired, and who had, at most, a mere tenure of office.''

The Supreme Court affirmed the judgment of ouster entered by the circuit court of Sangamon county.

These cases relating to justices of the peace are applicable to the factual situation before us, as the provisions relating to constables are similar to those relating to justices of the peace. The statute not only provides that the bond shall be filed within 20 days, but declares that if a justice of the peace or constable shall not within 20 days after his election, take the oath and give bond, he shall not be permitted after that time to qualify and that his office shall be considered as vacant. Paraphrasing the language of the Supreme Court in the *Greening* case, Clarence Schafahen and Alfred Schempp, whose terms expired, ''held a mere tenure of office.'' It is clear under the statute and the decisions that vacancies existed and exist in the office of constable.

The question is raised as to whether there is a duty on the defendant as town clerk to issue an order to the judges of election requiring them to hold an election to fill the vacancies. Section 7 provides that when a vacancy occurs in the office of constable, if the unexpired term exceeds one year, his office shall be filled

by a special election, and it shall be the duty of the town clerk to issue an order to the judges of election to hold an election to fill such vacancy. In the case of *People v. Hotz,* 327 Ill. 433, it appears that J. R. Brown, the State's Attorney of Madison county, was elected judge of the circuit court and resigned his office as State's Attorney. The board of supervisors appointed Alvin C. Bohn to fill the vacancy. A petition was filed against Joseph Hotz, the county clerk, for a writ of mandamus, commanding him to issue an order appointing a day for an election to fill the vacancy in the office of State's Attorney. The unexpired term was more than one year and the vacancy was therefore required to be filled by election. The court held that a provision of the statutes which permitted the board of supervisors to fill the vacancy was unconstitutional, and said (436):

"The duty imposed upon the county clerk to issue an order appointing a day for an election to fill the vacancy remained, and upon his failure to perform this duty a writ of mandamus should issue requiring him to perform it."

Accordingly, the county clerk was required by the writ of mandamus to issue an order appointing a day for an election to fill the vacancy. In our opinion the *Hotz* case presented the same principle as that involved in the case before us. The defendant, commenting on the *Hotz* case, states that there is a contrast between the important and essential office of State's Attorney and the "unimportant and in fact unnecessary office of constable of the Town of New Trier, where there are five constables acting at the present time, all duly qualified." It is clear that the constitution and the statutes comtemplate that a constable performs important duties. The defendant urges that the power or duty as town clerk to call a special election to fill vacancies in elective offices is

discretionary and not subject to control by mandamus, and that if any reasonable doubt exists as to the question of discretion in the office, the court will not interfere by mandamus. From the recent case of *People v. Village of Maywood*, 381 Ill. 337, it appears that an elector and taxpayer of Maywood filed a petition for mandamus to compel the officers of that village to call an election to fill a vacancy in the office of police magistrate. The court granted the writ of mandamus to compel the village officials to call the election to fill the vacancy. In affirming the judgment our Supreme Court said (340):

"If a vacancy exists and if the village officials, by reason thereof, have the official duty to call an election to fill such vacancy, they may be compelled by mandamus to perform such official duty. (*People ex rel. Oliver v. Knopf*, 198 Ill. 340.)"

From an analysis of the provisions of the statutes and the cases cited, we are convinced that the town clerk does not possess a discretion to determine whether a vacancy exists. It is clear that two vacancies exist in the office of constable. Therefore, it is the duty of the town clerk to order a special election to fill the vacancies.

As the defendant does not possess a discretion whether or not to order a special election, she can be required by a writ of mandamus to perform her duty. While it is stipulated that the township has an adequate number of constables at the present time, that is because two of them are hold-overs. In our opinion, the principle announced in the *Hotz* and *Maywood* cases are applicable to the instant case. The offices of constable and State's Attorney are provided for in the same article of the constitution. They are both important offices. The court has no discretion to enforce or not to enforce a law. If a law does not operate in the manner that some or even a majority of

the people believe it should, the remedy is not to ignore the law, but to go to the legislature or to the people to have such law changed. In the recent case of *People v. Schlaeger,* 381 Ill. 146, the Supreme Court said (155):

"The rule is also well settled that while the courts have some judicial discretion as to whether the writ of mandamus shall issue in proper cases, still, where a clear legal right is shown by the relator, he is entitled to the writ. *Illinois Central Railroad Co. v. People,* 143 Ill. 434."

The parties have stipulated that the cost necessary and incident to holding a special election for the purpose of electing two constables would be approximately $3,000. While the law does not give the clerk the right to exercise a discretion as to whether he should issue an order for a special election where it is clear that a vacancy exists, nevertheless, the clerk is given a discretion to determine the date on which the special election should be held. Section 7 provides that the clerk shall issue an order to the judges of election requiring them on a certain day therein named, not less than 20 days from the issuing of such order, to hold an election to fill such vacancy. It will be noted that while the day for an election cannot be sooner than 20 days, no other limitation is imposed as to the time when an election shall be held. Therefore, the clerk is given a discretion to fix the date. The discretion must be exercised reasonably. The legislature, probably considering the expense involved, intended to give a discretion to the clerk in the matter of fixing the day when an election should be held, but manifestly did not intend to give any discretion as to the calling of an election. A primary election was held in every precinct in the State in April 1942, and a general election was held in November 1942. The pro rata share of the town would be small, if anything. We do not know of any statute or rule that

would have prevented the town clerk of New Trier Township from ordering an election to be held on one of those days. The defendant's brief indicates that one of the reasons for her refusal to call an election is that she does not wish to put the taxpayers of the township to the expense that would be entailed. Should she issue an order requiring the judges and clerks of election appointed by the county board to hold an election to fill the vacancies on a day when another election is being held, as for instance in April 1944, and should anyone challenge her action in so doing, then the court before which the case should be litigated would have before it for consideration the question as to whether she abused her discretion, and at that time the court would have the right to consider the entire situation, including the expense involved. Accordingly, the judgment of the superior court of Cook county is reversed and the cause remanded with directions to proceed in a manner not inconsistent with this opinion.

*Reversed and remanded with directions.*

HEBEL and KILEY, JJ., concur.